DAVID A. NEWSON, Ordinary, *et al.*, plaintiffs in error, *vs.* THOMAS M. STARKE, administrator, *et al.*, defendants in in error.

1. Under the Revised Code of this State, our Courts of chancery have jurisdiction to carry into effect charitable bequests, the objects of which are definite and specific, and capable of being executed.

2. In determining what bequests for charitable purposes are definite and specific and capable of being executed, the Court is to be guided by the well settled rules of the Court of chancery in England in the exercise of its inherent chancery jurisdiction over charities as distinguished from its jurisdiction as the agent of the king in the exercise of his prerogative power to direct and give effect to indefinite charitable bequests.

3. A bequest to the Inferior Court of a county of a sum of money to be placed in the hands of four men, who are to give bond and security, whose duty it shall be to loan out said amount and pay over the interest annually to the Inferior Court, to pay for the education of poor children belonging to the county, and providing that no part of the principal shall be used for that purpose, is, according to the well settled rules for the exercise of the inherent power of a Court of chancery over charities, sufficiently definite and specific in its objects and sufficiently capable of execution to authorize and require our Courts of chancery to give it effect.

4. It is the duty of the Inferior Court, on its acceptance of the trust, in such case, to appropriate the money, as directed, and if any difficulties arise, or any uncertainties exist, as to the precise objects, or as to the mode of applying the fund, to apply to the Chancellor, who will direct, by decree, the leading details of the scheme to be adopted.

Equity.    Charitable bequest.    Before Judge ROBINSON. Greene Superior Court.    March Term, 1872.

William B. Bowen, as assignee of Reuben Allison, Thomas M. Stark, administrator of John Allison, Jesse Allison and

Martha Allison, executrix of David Allison, filed their bill containing suustantially the following allegations : That on April 29th, 1865, Gwyn Allison made his last will and testament and died soon thereafter, during the same year ; that William L. Strain was qualified as executor of said will on the 4th day of September, 1865, and proceeded forthwith to execute the same; that the tenth item of said will is as follows, to-wit :

" I give and bequeath to the Inferior Court of Greene county $20,000, to be placed in the hands of four men, who are to give bond and security, whose duty it shall be to loan out said amount and pay over annually to the Inferior Court the interest, to pay for the education of poor children belonging to said county, and that no part of the principal is to be used for that purpose."

That complainants are legatees under said will ; that on account of the emancipation of the slave property of testator, all the pecuniary legacies had to abate equally ; that under said tenth item said executor did, on June 2d, 1868, pay over to the Inferior Court of said county $3,000, and on the 13th day of the same month and year said Court passed an order turning over said sum of money to John C. Palmer, Lewis B. Willis, George C. Davis and Wiley B. Johnson, on their complying with the requirements of said will ; said defendants gave the required bond, and on the day and year aforesaid received from said Inferior Court $2,952 32 ; that on October 3d, 1870, said defendants were paid from the same source an additional sum of $1,633, making in all $4,585 30 received by them under said tenth item. Complainants charge that said item is void for uncertainty both as to its subjects and objects, void as to its subjects, as it is impossible to determine, from said will, or otherwise, who were intended by testator to be the beneficiaries of the legacy, what poor children of the county were meant, or who testator designated as poor children ; that even if it could be ascertained with sufficient certainty who are the poor children of the county according to testator's intention, it.

would still be uncertain what number and which ones of said poor children he intended to participate in this fund, as he does not say in said item all the poor children of the county, but simply "poor children belonging to said county;" that said item is void as to its objects because it cannot be ascertained by any Court what amount of education testator wished these poor children to have, at what ages they were to receive it, and at what kind of schools; complainants charge that the Ordinary of said county, the successor of the Inferior Court, has received the interest annually from said four men.   Prayer : that said tenth item of said will be decreed to be null and void for the reasons aforesaid; that said John C. Palmer, Lewis B. Willis, George C. Davis and Wiley B. Johnson be decreed to pay over to complainants, with the other legatees under said will, the amount that they have received under the provisions of said tenth item, together with all interest not paid heretofore to the Ordinary; that said David A. Newson, Ordinary, be decreed to pay over to complainants and the other legatees the interest that he has received on said sum of money; that said William L. Strain be decreed to account with complainants for any balance of said estate which he may have in his hands; that the writ of subpoena may issue.

The defendants demurred to said bill.

William L. Strain, executor of Gwyn Allison, having died pending the litigation, James L. Brown, *administrator de bonis non, cum testamento annexo,* was made a party.

The demurrer was overruled by the Court, and defendants excepted and assign said ruling as error.

REESE & REESE, for plaintiffs in error.   The defendants in error rely on 21st Ga. R., 21, and 25th, 439.   The legislation of the State has since materially affected said decisions : 4th Wheaton, 1 ; 9th Howard, 55 ; 17th *Ib.*, 369 ; 3d Cranch C. C. R., 269 ; 17th Searg. & Rawles, 88 ; 4th Dana, 354 ; 2d Iredell, 255 ; *Ib.*, 210 ; 4th Ga. R., 404 ; Code, secs. 2432, 3098, 3099.   Who constituted

the poor in 1865? Code, secs. 785, 1300. Elementary branches and rates of tuition: Code, secs. 1287, 1288. Construction of will : 9th Peters, 483.

M. W. LEWIS; J. A. BILLUPS; H. D. McDANIEL, for defendants.   1st. No provision indicated for support of the beneficiaries: 25th Ga., 430; Jar. on Wills, 333 ; 3d Cranch C. C. R., 269 ; 4th Am. L. R., 526.   2d. Jurisdiction of Chancery in Georgia over charitable bequests limited to such as are definite and specific: Code, sections 2432, 3098, 3099 ; 25th Georgia Reports, 430 ; 18th *Ibid.*, 130 ; 4th *Ibid.*, 427.   Cy-pres doctrine: 2d Story Eq. Ju., 1159, 1160, 1187, *et seq.;* 4th Kent's Coms., 508 ; 4th Wheaton, 1; 9th Howard, 55 ; 17th, 369; 3d Cranch C. C. R., 269 ; Brightley's Rep., 346.

McCAY, Judge.

Were the law of Georgia on the subject of charitable bequests precisely as it was when the case of *Beall vs. Drane,* 25*th Georgia,* 430, was decided by a majority of this Court, we should feel greatly embarrassed by that decision.   As we shall hereafter show, the principles of that decision would deny to Courts of chancery in this State any other jurisdiction over charitable bequests than they have over ordinary trusts.   Indeed the decision in Maryland, (5th Harr. & John. R., 392,) which is the only case referred to fully sustaining the conclusion at which the majority of our Court arrived, was put by the Maryland Court expressly upon that ground.   If this be so, the case in 25th Georgia would seem to be directly contrary to the unanimous decision of this Court in the Fox will case, decided in 4*th Georgia Reports,* 404, where it was held that the *principles* of the statute 43d Elizabeth are of forcein this State, and where a bequest was enforced which was utterly void, as too uncertain for judicial action, unless jurisdiction over it was taken by virtue of the special jurisdiction of Courts of chancery over charitable bequests.   But whatever may have

been the state of the law at the date of the hearing of the Beall will case, it cannot be doubted that, under the Revised Code of this State, our Courts do have a special jurisdiction to *carry into effect* charitable bequests. Sections 3099 and 2432 declare the doctrine of *Cy-pres*—the most striking feature of the special jurisdiction over charities—to be a power of our Courts. Section 3100 defines what are charitable subjects, and in so doing almost copies the statute of 43d Elizabeth. And section 3103 goes further than was usual even in the English Courts by allowing parol evidence to explain and give point to bequests coming within the class defined as charitable. It is true, that section 3098, which in general terms declares the jurisdiction, uses the words, "when the same are definite and specific in their objects and capable of being executed," but as we shall hereafter show, to give these words the confined and limited meaning contended for by the defendant in error, or even as suggested by the majority of the Court in the Beall will case, would be to ignore the whole history of the law upon this subject and impute to the framers of the Code the folly of conferring a jurisdiction over charitable bequests, and in the very words conveying it denying it altogether.

The right of a testator to make *any* definite and specific bequest, and for any definite purpose not contrary to law or public policy, has never been denied by any Court. That the gift is to one person or to a thousand is immaterial—that it is for one purpose or another can make no difference, if the purpose be not illegal. A Court of law or of equity, accordingly, as it is within the jurisdiction of either, would always enforce it, if it were *definite* and *specific* in averment, and the legatees were distinctly pointed out. The ordinary powers of either Court in settling disputes of suitors are abundant for this purpose. A bequest, for instance, to the great-grandchildren of A, who died in 1800, to be equally divided between them, might be a bequest to a large number of people, but the proper Court, if the amount of the legacy were certain, would have no want of power to enforce it, be-

cause the objects of the testator's bounty are definitely and specifically pointed out and capable of exact ascertainment. Nor would it make any difference that the motives of the testator were his kinship to said grandchildren, or charity for them, or whether they were poor or rich.

The special chancery jurisdiction over charitable bequests grows out of the rule that, in cases of private right, Courts will not enforce uncertainties, and that the parties at interest must be capable of definite ascertainment. It is of the very nature of a charity that this is impossible, and from the most ancient times Courts of chancery in England have applied very different rules in determining the validity of charitable bequests from the rules applied to such as were not charitable. A less degree of certainty as to the objects of the bequest, and as to the mode of its application has been required than was requisite in other bequests. It is of the very essence of a charitable bequest that the objects to be benefited shall be to some extent indefinite. Mr. Justice Grey, in Jackson *vs.* Philips, 14th Allen, 556, gives the following as the definition of a charity so far as the objects of it are concerned : "A charity in a legal sense may be more fully defined as a gift to be applied (consistently with existing laws) for the benefit of an *indefinite* number of persons." And in Fontaine *vs.* Ravenel, 17th Howard, 384, Judge McLean, in delivering the opinion of the Court, says: "It is no *charity* to give to a friend. In the books it is said that the thing becomes a charity when the *uncertainty* of the recipient begins." And in Salstonsal *vs.* Sanders, 11th Allen, 456, the Court says: "It is the number and *indefiniteness* of the objects which is the essential element of a charity." And this for the very simple reason that if the amount be certain, and the persons to take be certain, the bequest has nothing in it outside of the ordinary jurisdiction of Courts of chancery over trusts or of Courts of law over legacies: Blanford *vs.* Fackerell, 4 Brown Chan., 394, 1 John, 612; Liley *vs.* Huy, 1 Hare, 580.

It follows, therefore, that when the framers of our Code

declared our Courts of chancery to have jurisdiction to en-
force charitable bequests, declared what were charities and
recognized the doctrine of *Cy-pres,* they intended to say
something more than that Courts of equity could enforce
trusts.     There was no propriety in giving this special juris-
diction if a bequest, for charitable purposes, to be valid,
must have the same certainty and definiteness as to its objects
and mode of division, as bequests, not for charitable pur-
poses.     There was no reason for defining charitable purposes
if bequests of that character must have the same definiteness
and certainty as bequests for other purposes.     Since nobody
for a moment ever supposed there was any trouble in en-
forcing a definite and specific bequest simply because the
testator's motives for making it were charitable.     All be-
quests are charities, in so far as they are without considera-
tion.     They are bounties, gifts, and dependent upon the
simple will of the testator.     It seems, therefore, incontestible
that the words " definite and specific," used in this section of
the Code are to be understood in connection with the other
words used, to-wit : "charitable bequests."     Since to give
them the same meaning as though they were used in connec-
tion with other bequests would be to make the law absurd.

We are, therefore, to look for the proper meaning of these
words to the fathers of the law ; we are to go for the proper
sense of them, when applied to charitable bequests, to the
English Chancery Decisions, as provided by section 3045 of
the Code.     There were, according to these decisions, two
classes of charitable bequests, to-wit : bequests to "charity"
indefinitely, or for "religion" or "pious uses" indefinitely,
or for "education" and other bequests; when, though there
was a clearly expressed charitable intention, there was a total
want of any special objects, and a total failure to fix any
means by which the objects should be pointed out or the fund
applied.     In such cases, Courts of chancery in England, as
such, had no power to carry them into effect.     The charity
was not, however, allowed to fail.     The king, under his
sign manual, declared the objects and pointed the mode of

application, or the Lord Chancellor, not as a Judge but *instead of* the king, did the same: 1 Jarman on Wills, 224. See, also, Perry on Trusts, section 729, and the cases cited. But if the general objects of the bequest were pointed out, or if the testator had fixed any means for doing so, as by the appointment of trustees for such purpose, Courts of chancery treated the bequest as one sufficiently definite and specific for judicial cognizance and carried it into effect, notwithstanding there might remain some indefiniteness and uncertainty. The Chancellor referred the case to the Master to devise a scheme by which any *such* uncertainties should be determined. Thus a gift to "the poor": Legge *vs.* Asgill, Turn & Russ., 265; 49 Maine, 288; to a particular parish or place: 9 Allen; 2 Sanford's Chancery, 46; 2 Iredell's Equity, 210; 13 Allen, 474; 1 Beav., 370; 5 Beav., 289; or to the widows and orphans of a parish; 2 Sim. & G., 93; or a gift to a church to be laid out in bread for the poor: 17 Sergeant & Rawle, 88; were all held good. The distinction would seem to be this: If the bequest be to charity generally, or to religion and education generally, the jurisdiction was not in the Court, as such, to carry into effect; but if the objects of the gift were stated, though only generally, or if there were a trustee appointed, the Court would supply the want of definiteness in the object or would compel the trustee to carry out the general intent of the testator: See Perry on Trusts, sec. 719.

Assuming, therefore, that by the words "definite and specific" our Code means such as by the usual practice in Chancery Courts are held to be "definite and specific," we think the words of this bequest come within the rule. Here is a trustee, and here are the objects—the Inferior Court and the poor children of Greene county. It is true there is some indefiniteness in the objects, since the word *poor* and the word *children* are both to some extent indefinite. But as we have seen, if *such* an indefiniteness is to make the bequest illegal for want of certainty, then all charities must fail, since, in the very nature of them, *this* kind of indefiniteness must exist. An examination of the authorities will, however, clearly

show that such a bequest as this has uniformly been held to be sufficiently certain for the exercise of that peculiar jurisdiction which the Courts of chancery, as such, undertake to exercise over charitable bequests: See Story's Equity, sections 1164–5; Hill on Trustees, 81, 128, 452; Perry on Trusts, 719 *et seq.; Vidal vs. Gerard's executors, 2 Hare, 127; 7 B. Monroe, 611; Williams vs. Pearson, 38 Alabama, 299.

Without doubt there has been, until within a few years, some confusion in the minds of even Judges upon this subject. It has been sometimes supposed that the whole jurisdiction of Chancery in England over this subject was only a branch of the King's prerogative and not a judicial function at all, and again it has been thought that the jurisdiction was wholly derived from the 43d Elizabeth. But it is now well settled that it is only that branch of the jurisdiction which undertakes to carry into effect charities generally where there are no trustees, which is prerogative, and that when trustees are appointed, or where the objects of the charity are pointed out, even generally, then the Court acts by its inherent power over trusts; but from the nature of the subject-matter it does not require the same degree of definiteness and certainty as it would if the bequest were not charitable: See Perry on Trusts, sections 690, 748.

We see no difficulty in the Inferior Court of Greene county devising a scheme, in accordance with the manifest intent of the testator, and carrying it out faithfully. If the Court should fail or should itself need judicial aid, the Court of Chancery has power here to appoint a Master to devise a proper scheme *for carrying the bequest into effect.*

Judgment reversed.