WHITE v. McKEON, trustee.

1. The provisions of section 2419 of the code, forbidding any person leaving a wife or child from devising more than one third of his estate to any charitable, religious, educational or civil institution, to the exclusion of such wife or child, and declaring that in all cases the will containing such devise shall be executed at least ninety days before the death of the testator, or such devise shall be void, were not in force in this State before the adoption of the code of 1863.
2. Where by one item of a will certain realty was devised in trust to the wife of the testator for life, with power to dispose of the same by her last will and testament, and by another item of the will all the *residuum* of the testator's estate (which would include the remainder in the realty devised to the wife, in case she did not dispose of the same by will) was devised to a named trustee to be invested by him for the purpose of erecting a school-house and keeping up a school to be free for all the poor children of a designated city, with power to appoint his own successor, but the trustee having died without exercising this power, the judge of the superior court was authorized, during the lifetime of the testator's widow, to appoint a trustee to carry out the provisions of the will in the item last mentioned.
3. The remaindermen, "the poor children of the city," being contingent both as to person and event, were not necessary parties, and service upon them of notice of the application for the appoint-

ment of such trustee was not essential. Nor, under the facts stated, was there any other person legally entitled to notice of the application; and this being true, the judge could exercise this power, in his discretion, upon the petition of any one.

4. By sections 4221, 4222 of the code, proceedings in the execution of the protective powers of chancery over trust estates may be acted upon by the judge in vacation and at chambers. And section 3195 of the code declaring that "a trust shall never fail for the want of a trustee," the appointment of a necessary trustee could be made at chambers, the same being a needful execution of the protective powers of chancery over the estate created for the benefit of the poor children of the city.

5. Under the facts alleged in the plaintiff's petition, it being in the power of the plaintiff to make a good and valid title to the defendant, and the latter being bound by his written contract to purchase the property upon tender of a sufficient legal title, the court did not err in overruling his demurrer to the declaration.

March 27, 1893. Argued at the last term.        *Judgment affirmed.*

Action on contract. Before Judge EVE. City court of Richmond county. August term, 1892.

To the petition of W. P. McKeon, trustee of Ann McKeon (formerly Adams), the defendant, White, filed a demurrer, which was overruled. The petition alleged: On June 24, 1856, James Adams died without children, leaving his will which was duly probated. At the time of his death he was the owner in fee of a lot of land described, and had a perfect title thereto. By the second item of the will he devised the land to his wife, Ann Adams. Foster Blodgett, her trustee therein appointed, died in 1876, and in April, 1892, petitioner was duly appointed her trustee; she and Percy May, duly appointed trustee of the Adams Institute, and the solicitor-general of the Augusta circuit, being parties regularly served in the proceedings by which petitioner was appointed. Petitioner obtained an offer from White to purchase the land at $25,500, and thereafter by proceedings to which Ann McKeon, Boykin Wright, solicitor-general of the Augusta circuit, and May, trustee of the Adams Institute, were parties, obtained an order of the

judge of the superior court authorizing the sale of the property to White for $25,500 cash. The property thereafter was offered to White, and a deed signed by petitioner as trustee, by Ann McKeon individually, as life tenant, as residuary legatee, was tendered to White, who thereupon refused to accept the deed. The excuse given by White for refusing to accept the land and pay the purchase money is without legal cause, and the proceedings attached to the petition show that petitioner is the duly qualified trustee under the second item of the will, and that the deed signed by himself and Ann McKeon, and the instrument signed by herself exercising the power of appointment mentioned in the second item, conveys to White an absolute, unqualified and perfect fee simple title to the property, by reason whereof White is indebted to petitioner in the sum of $25,500, etc. Petitioner again tenders the fee simple warranty deed and .makes a continuing tender thereof, and prays for judgment against White.

Attached as an exhibit was a petition of the solicitor-general of the Augusta circuit, " representing the public generally," to the judge of the superior court of Richmond county, alleging : James Adams died leaving a will, a copy of which is annexed, under the eighth item of which Blodgett was appointed trustee of a charitable institution to be established and known as the Adams. Institute, in the manner and for the purposes set forth in the will. Under the eighth item Blodgett was empowered to appoint a successor to himself as trustee, but died without having exercised this power, and the institute has no trustee. Petitioner is informed and believes that there are large parcels of land in Louisiana which belong to the institute, which have never been sold. The institute is the residuary legatee under the second item of the will, and as such is interested as a contingent remainderman in the property conveyed to

the wife of James Adams under the second item. Wherefore, in behalf of the poor children of the city of Augusta, he prayed that the court would appoint a trustee for the Adams Institute, to carry out the will in reference to that institution. Attached to this petition was a copy of the will, whereby testator bequeathed to Blodgett the land in question, in trust for the sole and separate use of his wife Ann Adams, during her life, free from the control etc. of any future husband, and at her death the whole to be disposed of in such manner as she might by her last will direct; provided, that should it be deemed desirable to change the trust estate, the trustee should have power, without any order of court, to sell all or any portion of the property, Ann Adams to join in the conveyance, and the amount raised to be invested in other property to be held to the same uses and trusts. Another item bequeathed all the residue of testator's estate to Blodgett, to be invested by him in erecting a school-house and keeping up a school in Augusta, to be free for all the poor children of that city and under the exclusive control and direction of Blodgett during his life; and gave to Blodgett power to appoint in writing a successor, to succeed in the control and management of the school and the fund appropriated to its support; and directed that the title of the school should be the Adams Institute. The judge of the superior court, at chambers on April 6, 1892, passed an order appointing May trustee of the Adams Institute, which appointment on the same day May accepted. It does not appear that there was any service of the petition of the solicitor-general.

Also exhibited was the petition of Mrs. McKeon to the judge of the superior court, stating: James Adams died leaving his will, by the second item of which he bequeathed to her certain land, describing it (being the land in question). She has been in possession of the

property since his death. After his death she married McKeon, and in 1876 Blodgett, the trustee named in the will, died leaving no successor. There is a vacancy in the trusteeship which she desires to have filled, and she prays the appointment of her son W. P. McKeon, to represent her as trustee under the terms of the will, and that notice of the application be served upon such person as the court may indicate as a fit and proper person to represent the trust estate created in the eighth item of the will, petitioner being informed that the institute claims a contingent remainder interest in the land. The petition sets forth certain reasons why it is necessary to have a trustee appointed. Attached to this petition was a copy of the will, and an order of the judge, that, it being made to appear by an examination of the petition that the trust estate created in the eighth item claimed a contingent remainder interest in the land devised to Mrs. McKeon, and the court having appointed May as trustee for the institute, and it further appearing that the trust created is a public charity, it is ordered that the petition be served upon May, as trustee of the institute, and also upon the solicitor-general of the Augusta circuit, representing the public, who would examine and answer the prayers of the petition. May as such trustee and the solicitor-general acknowledged service of this petition, upon April 8, 1892, and reported that W. P. McKeon was a proper person to be appointed trustee for his mother and for the estate created in the second item; and on the same day the judge passed an order, that, the petition having been regularly and duly served upon May, theretofore appointed trustee of the estate claiming a contingent remainder, and also upon the solicitor-general, and the appointment of W. P. McKeon being consented to by all the parties in interest, and it appearing that he is a fit and proper person to act as trustee, it is ordered that he be appointed as such upon giving bond.

Also exhibited was the petition of W. P. McKeon to the judge of the superior court, stating: He is the duly appointed trustee of Ann McKeon and of the property passing under the second item of the will of Adams. That property is unremunerative and not bringing in a proper income in proportion to the value of the land. The life-tenant has no other means and is unable to improve or repair the same, etc. The property can be most advantageously sold for cash at private sale, and the proceeds invested in more profitable property for the benefit of the estate and the *cestui que trust*. He has an opportunity to sell the fee of the property to Timothy White for $25,500, its full value. Ann McKeon is willing to join in the sale, and to contract to devise the property to White, in consideration of the advantage to her arising out of the sale, and to agree not to revoke or cancel said devise to him by any subsequent will. Petitioner prays to be allowed to sell and contract the property to White for the sum mentioned, and that a copy of the petition be served upon Mrs. McKeon, the solicitor-general, and May as trustee. The service was ordered by the judge and was made, and consent given to the sale by May as trustee, and by the solicitor-general. Mrs. McKeon acknowledged service of a copy of the petition and consented to the sale, and in writing stated that she would join in the conveyance from the trustees, and; in consideration of the benefit to her as life-tenant from the sale of the land and the investment in other property, would likewise devise the land to White by irrevocable will, under the power of appointment by will conferred on her in the will of Adams. The judge granted authority to sell as prayed for, and ordered that the trustee make report to the court of his actings in the event of sale, report the property in which the proceeds had been invested and hold the same subject to the same uses as contained in the second item of the will.

Also exhibited was the correspondence between McKeon and White: Under date of June 1, 1892 (?), White wrote to McKeon, that he had been informed McKeon was acting for Mrs. McKeon and desired to sell the property; that some time before he offered Mrs. McKeon $25,500 cash for it, provided the title was perfect; that upon examination it was found that there was some complication, and if McKeon was in a position to get rid of the trusts and remainders and convey to White a perfect title in fee simple, the latter would be glad to buy the property at that price and would pay cash, but he did not wish to buy a lawsuit or get a title about which there was any doubt. On June 8, 1892, McKeon replied, that upon receipt of White's letter he took steps, at Mrs. McKeon's request, to have himself appointed trustee, and wrote to accept the offer of $25,500 for the property; that Mrs. McKeon would join the writer in any necessary conveyance, and if there was anything necessary to be done to make White a valid and perfect title to the land, McKeon would take pleasure in having it arranged. On the same date White wrote, acknowledging the receipt of this letter, and stating that if McKeon was the legally appointed trustee and could make him a perfect title, free from all trusts and remainders, incumbrances or liens, so as to give him perfect title by a fee simple deed, he would take the property at the price named, otherwise he did not want it; and that he would want the title examined by an attorney. On June 15th White wrote that he had had the title examined, and regretted that he could not accept the deed tendered; that he was advised that there were several irregularities in the appointment of the trustee for the institute and in McKeon's appointment, and therefore that the deed offered by McKeon was invalid and did not convey a perfect fee simple title to him, White. McKeon answered, insisting that his appointment was

regular, that the deed tendered did convey a perfect title in fee simple, and that he would hold White to the bargain, etc.

The grounds of demurrer were: (1) The petition sets forth no cause of action. (2) The court has no jurisdiction of the suit. (3) The order appointing May trustee of the institute was void, the same being in vacation and without service upon any of the beneficiaries of the trusts, and without proper service upon any person. (4) McKeon was not properly appointed trustee of Mrs. McKeon, there being no proper service upon the persons interested as beneficiaries in the institute, and service upon May being insufficient, the record of his appointment showing that he had not been duly appointed trustee. (5) It appears from the exhibits attached, and from the will of James Adams, that plaintiff cannot convey the lands to defendant so as to give a perfect title in fee simple without remainders or trusts, such as was provided for and required by the written offer to buy the land and the acceptance thereof by plaintiff.

J. R. LAMAR, for plaintiff in error.
JOHN A. BARNES, contra.