BRAMBLETT *et al.,* trustees, *v.* TRUST COMPANY OF GEORGIA, executor, *et al.*

No. 10693. MARCH 11, 1936. REHEARING DENIED MARCH 20, 1936.

*Harris, Russell, Popper & Weaver,* for plaintiffs in error.

*Crenshaw & Hansell, A. M. Zellner, G. O. Miller, Ryals, Anderson & Anderson, Willingham & Willingham, J. R. Bowden,* and *R. M. Holmes,* contra.

ATKINSON, J. Mrs. Dosia Head Brooks died leaving a will. R. P. Brooks, her husband, was her sole heir at law. Subsequently R. P. Brooks died leaving a will. On application for probate of this will the heirs at law of R. P. Brooks interposed a caveat which finally resulted in refusal to set up the paper as a will, and the estate was ordered to be distributed as in case of intestacy. In item 52 of the will of Mrs. Brooks the testatrix devised the residue of her estate "to the Trustees of the Dosia Head Brooks Home for Gentlewomen." The heirs at law of R. P. Brooks asserted a contention that this item of the will was void, and consequently there was an intestacy as to the said residue, and it descended to R. P. Brooks as sole heir at law, and to his heirs at law upon his death without having left a valid will. The qualified executor of the will of Mrs. Brooks filed suit for construction of the will and direction in relation to the residue of the estate. The trustees filed their answer to the petition, contending (1) that the title to the property devised for said "Home," vested in them upon the death of Mrs. Brooks, that the executor of her will is bound to assent to the devise, that the will creates a public charity, and that they are ready and willing to take the title conveyed. (2) That the executor of R. P. Brooks has no legal claim to the residuum of Mrs. Brooks' estate, as her heir at law, and there is no intestacy as to said residue. (3) That without a petition to the court by the trustees, for

direction in the event it is impossible to carry out the will of the devisor, this court has no authority to assume jurisdiction of the trust property. The heirs at law of R. P: Brooks filed answer contending: (1) It is impossible to carry out those provisions of the will and codicil in which Mrs. Brooks attempted to dispose of the residue of her estate for the purposes stated, because of the judgment sustaining the caveat to those portions of the will of Mr. Brooks which provided funds for the maintenance of the "Home for Gentlewomen." (2) The proposed creation of the Home for Gentlewomen "is not the proper subject of a charitable devise under the law of Georgia; and each and all of said items of said will and of said codicils are therefore invalid and void under the laws of the State of Georgia; and there is therefore an intestacy as to all of the property both real and personal embraced in said items or any of them," and "that the object of said purported trust and beneficiaries thereof are not such as the law of Georgia permits such a trust to be executed for." Also, that said will attempts to create a perpetuity, in violation of the Code of 1933, § 85-707, the same not coming within any of the objects of charity as set forth in § 108-203. (3) That said provisions of the will should be decreed null and void, and that the property sought to be devised be decreed to pass under the law of descent and distribution to the heirs at law of R. P. Brooks.

The case was submitted to the judge for a decision upon the pleadings alone. He rendered an opinion which concluded: "It is therefore the judgment of the court, and it is so ordered, that the items of Mrs. Brooks' will and the codicil thereto set out in the petition, devising the residuum of her estate for the purpose of establishing and maintaining the 'Dosia Head Brooks Home for Gentlewomen,' is void for uncertainty as not constituting a public charity within the meaning of the law, and that as to such residuum she died intestate; and Mr. Brooks having survived her as her only heir at law, that he took said residuum by inheritance, and that his heirs at law are entitled to the proceeds thereof under the laws of inheritance and distribution. It is further ordered that the petitioner, as the executor of the will of Mrs. Dosia Head Brooks, do administer said intestacy, and, after complying with all of the legacies bequeathed in said will, distribute the proceeds of said property among the heirs at law of R. P. Brooks, under the laws

of inheritance and distribution." To this judgment the trustees excepted, assigning error on the following grounds: (1) "Because the same is contrary to law." (2) "Because the same is contrary to the principles of justice and equity." (3) "In holding, deciding, and decreeing that the items of the will of Dosia Head Brooks and the codicil thereto set out in plaintiff's petition, devising the residuum of her estate for the purpose of establishing and maintaining the 'Dosia Head Brooks Home for Gentlewomen,' were void for uncertainty as not constituting a public charity within the meaning of the law. Plaintiffs in error say that this was error, because the devise to these trustees of the Dosia Head Brooks Home for Gentlewomen was definite and certain, and said provisions were a valid charitable devise and bequest." (4) "In holding and deciding that as to the residuum of her estate Dosia Head Brooks died intestate. Plaintiffs in error say that this was error, because the will of Dosia Head Brooks made a legal and valid disposition of said residuum." (5) "In holding and deciding that the heirs at law of Richard P. Brooks are entitled to the proceeds of the residuum under the laws of inheritance and distribution. Plaintiffs in error say that this was error, because the residuum was legally and validly disposed of under said will." (6) "In ordering and decreeing that the plaintiff, as the executor of the will of Mrs. Dosia Head Brooks, administer said intestacy, and, after complying with all of the legacies bequeathed in said will, distribute the proceeds of said property among the heirs at law of R. P. Brooks under the laws of inheritance and distribution. Plaintiffs in error say that this was error, because there is no property of Mrs. Dosia Head Brooks not validly devised and bequeathed by the will of Mrs. Dosia Head Brooks, and the heirs at law of R. P. Brooks have no interest in any of the property of Mrs. Dosia Head Brooks and are not entitled to have any of that property or its proceeds distributed among them." (7) "In failing and refusing to decide and decree that the devises and bequests to the trustees for the maintenance, erection, and equipment of a home for gentlewomen known as the 'Dosia Head Brooks Home for Gentlewomen' were a legal and valid testamentary disposition of the property so devised and bequeathed in the will of Mrs. Dosia Head Brooks and the codicils thereto." (8) "In failing and refusing to order and decree that

the Trust Company of Georgia, as executor of the will of Mrs. Dosia Head Brooks, assent to the legacy to the plaintiffs in error as 'Trustees of the Dosia Head Brooks Home for Gentlewomen,' and turn over the residue of the estate of Mrs. Dosia Head Brooks in its hands to said trustees to be administered in accordance with the terms of the will of Mrs. Dosia Head Brooks."

In the opinion the judge set forth substantially the features of the case as above indicated, and the following in relation to pertinent provisions of the will: "Item 51 of the will of Mrs. Dosia Head Brooks is as follows: 'I give and bequeath to my beloved husband R. P. Brooks, for and during his natural life, and so long as he may desire to stay there, my home place in said State and county, containing 125 acres, more or less, and all of the improvements thereon.' Item 52 provides: 'All the rest, residue, and remainder of my property of whatsoever character and wheresoever located, including my home place hereinbefore described in item 51, after the death of my husband, or after he indicates his desire not to live there any longer, and including the remainder or reversion in the funds directed to be set aside to provide annuities for my faithful servants hereinbefore provided, I will and devise to the Trustees of Dosia Head Brooks Home for Gentlewomen.' The will provides for the naming of thirteen trustees, of whom nine are named in the will, and granting the power of selecting four others 'as soon as it becomes possible to begin the actual operation' of the home, from groups therein specified, and with powers of self-perpetuation. Also: 'I will and direct said trustees to use all property, money, or funds which under this will comes into their custody or control, for the maintenance, erection, and equipment of a home for gentlewomen known as the Dosia Head Brooks Home for Gentlewomen; and I hereby give and grant unto said trustees and their successors in office full and complete power and authority to use the money, property, or funds herein devised, in such manner as in their absolute discretion may be expedient to carry into effect this item of my will, whether such property be used for the purpose of erecting buildings or making improvements on the land, or be set aside to provide an income for the institution.' Power is granted to invest funds of the trust when necessary, and to sell property thereof at discretion of the trustees and without any order of court; 'Provided always, that

I will and direct that the tract of land upon which my home now stands, and twenty-five acres of land immediately contiguous thereto and extending out to the public road in front thereof, shall not be sold by said trustees, but any other part of said one hundred and twenty-five acres home farm may be sold by said trustees under the provisions hereinbefore named.' Also provides for the erection of memorial tablets in said home in memory of the father and mother of the testatrix. Item 9 of the codicil authorizes the trustees to 'accept any gifts, devises, bequests, or become beneficiaries under any policy of insurance for the purpose of said Home.' Item 16 of the codicil bequeaths the insurance of the testatrix to the 'Home.' "

In the brief for the attorneys for the plaintiffs in error it is stated: "The only inaccuracy in this statement of the contentions of the parties is in saying that the trustees contended that the will creates a public charity. It is more accurate to say that the trustees contended that the will created a valid trust for charitable purposes under the equitable doctrine recognized in Georgia." After the statement of the case, the court proceeded in the opinion as follows: "If the will creates a public charity under the provisions of § 108-203 of the Code of 1933, it is not in contravention of the law against creating a perpetuity, and the named trustees and those to be chosen as such take the title to said property in trust for such charitable use, and the executor of Mrs. Brooks would have to surrender unto them the possession of all the property devised for said purpose, which would divest Mr. Brooks as the heir at law of his wife of any right to receive the proceeds of said property. The fact that the designed 'home' is to become a memorial unto the father and mother of the devisor, and to bear their name, would not of itself vitiate the charitable devise. § 108-201 of the Code of 1933 provides: 'Equity has jurisdiction to carry into effect the charitable bequests of a testator, or founder, or donor, where the same are definite and specific in their objects, and capable of being executed.' This Code section lays down three necessary essentials in the creation of a public charity, in order that a court of equity might enforce its execution. These essentials are as follows: (1) The bequest must be a charitable one within the meaning of § 108-203 of the Code of 1933. (2) The provisions thereof must definitely specify the objects

thereof. (3) The purposes of the bequest must be capable of execution. Do the provisions of the will of Mrs. Brooks meet all of these requirements, as she endeavors to create The Dosia Head Brooks Home for Gentlewomen as a public charity? The language employed in framing the devise does not attempt in any way to describe either the nature of the proposed 'Home for Gentlewomen' as an institution of charity, or to designate with any definiteness the class of objects of her benevolence who are to take as the beneficiaries under and by virtue of her will. The will does not describe an institution for the specific relief of aged, impotent, diseased, or poor people; or for educational purposes, religious instruction or worship. It does not provide for the construction or repair of public works, or highways, or other public conveniences; or for the promotion of any craft or persons engaging therein; or for the redemption or relief of prisoners or captives; or for the improvement or repair of burial grounds or tombstones; all of which are objects of public charity, being specified in the first seven paragraphs of said Code, § 108-203; therefore, if a public charity is created by the said will, it must be comprised within the meaning of the last paragraph of said section, paragraph 8, which reads as follows: 'Other similar subjects, having for their object the relief of human suffering, or the promotion of human civilization.' Otherwise there is a complete failure on the part of the devisor to create a public trust within the meaning of the law of Georgia. Let us examine into this.

"'The term [home] being a relative one, its meaning must often necessarily depend upon the context.' 21 Cyc. 446; 29 C. J. 767. 'The word "home" when made the subject of a devise is ambiguous, and may mean merely the use of sufficient room, or it may include a support.' In re Denfield, 156 Mass. 265 (30 N. E. 1018). Again we are forced to say that the devisor's will is absolutely silent as to whether the inmates of the 'home' are to merely room there, or are to also receive their entire support. The designation of the inmates of the 'home' (the objects of the trust) as 'gentlewomen' affords no assistance in describing the institution as a charitable one; but rather negatives that inference. The word 'gentlewomen' is a relative one without any legal significance. In Cresson v. Cresson, 6 Fed. Cas. 807, 809, the word 'gentleman' is defined as follows: 'A "gentleman" according to Dr. Johnson is, first, "a

man of birth . . but not noble;" . . second, . . "a man raised above the vulgar by his character or past.' The feminine of 'gentleman' is 'gentlewoman,' and is defined in Ballentine's Law Dictionary, as 'woman of the same rank or status as that of gentleman.' Obviously such a person is not per se an object of charity under the law; and it is greatly to be doubted whether the phrase 'Home for Gentlewomen' can, by any liberal rule of construction, describe a public charity within the purview of § 108-203 of the Code of 1933. Certainly gentlewomen are not ordinarily objects of 'suffering humanity.' Then, if not, and without being so described by the devisor in her will, can the phrase 'Home for Gentlewomen,' be construed as creating an institution for the promotion of 'human civilization' so as to make it a public charity within the meaning of the last clause in paragraph 8 of said Code section? It is the writer's opinion that it could; but again we are forced to say that the will contains no such necessary description. The word 'gentlewomen' instantly brings before one's mind the personality of his own mother—the embodiment of gentleness, patience, forebearance, unselfish service, courage, culture, refinement, character, and all other good human attributes; a perfect product of human civilization. The very existence of such persons tends to promote human civilization; and no finer institution could be designed than a home for 'gentlewomen,' wherein those of that peerless class, who are in need of a home, could find kindness, sympathy, comfort, and support, securely protected against the coldness and indifference of the outside world. But to create such a home as a public charity under our law by the devise of property, the necessary words to create 'gentlewomen' as a class from which the objects of the charity must be chosen necessitates definite and specific averment, as such legatees must be distinctly pointed out. See *Newson* v. *Starke,* 46 *Ga.* 88. It was said in the case of Levy *v.* Levy, 33 N. Y. 107, that 'if there is a single postulate of the common law established by an unbroken line of decisions, it is that a trust without a certain beneficiary who can claim its enforcement is void.' This is the rule in this State. Code of 1933, § 108-201.

"Measured by this rule, does the will under review meet the requirements of the law? Are the objects of the proposed public charity (conceding for the sake of the argument that a 'Home for Gentlewomen' without other description is a public charity) defi-

nitely described so as to make the purpose and intent of the bequest, viz., the establishing, maintenance, and support of such a 'Home,' capable of execution? Nowhere in the will does the testatrix say which 'gentlewomen' shall be entitled to the benefits of the 'home,' or where they shall come from. As it must be assumed that there are millions of 'gentlewomen' throughout the civilized world, then, in the absence of a mode of selection, all of them would become the beneficiaries of the devisor under the will, and would possess an equal right to apply for admission to the 'home,' as the class 'gentlewomen' is not limited to any specified county, State, the United States or Nation. Neither are the objects of the intended class specified in any manner. Are the ones to be admitted to be rich or poor, young, middle-aged, or old, sick, or well, or of what race or color? Failing to state the essentials of the law herself in the will, the testatrix does not grant the power unto her trustees the making of such selection so as to make a compliance with the law. § 108-206 of the Code of 1933 provides: 'If the terms of the bequest or deed are obscure, doubtful, or equivocal, other evidence may be looked to, to ascertain the sense in which particular expressions are used, but not to make definite that which in itself is too indefinite for execution.' But no extraneous facts are presented to the court, to make clear the intentions of the devisor. It is a general rule that the intentions of the testator must be sought in construing a will, but the court has no power to devise a new scheme or to make a new will. In 11 C. J. 343, § 61, it is said: 'However, to justify the admission of parol evidence, the instrument must contain sufficient indication or intention to warrant the application of the evidence; and where the beneficiaries are not described in some way, evidence will not be admitted to show who was intended.' Clearly, if the kindly purpose of Mrs. Brooks, which is so imperfectly stated in her will, were to be carried out, it would have to be done by some mode devised by the trustees themselves, or a court of equity for them. In 5 R. C. L. 348, § 83, it is said: 'But where the class of beneficiaries is unlimited, and no definite manner of selection is pointed out by the will or instrument creating the trust, the trust is not enforceable, although the power to select the beneficiaries is given to the trustee. It has been held that even though the number of the institutions from which the executors of wills may select are

limited to a certain locality the trust is unenforceable on the ground that the beneficiaries are too uncertain. And the difficulty is not avoided because the power of selection has in fact been exercised, nor because it has been exercised in favor of beneficiaries which, if they had been the direct objects of the testator's bounty, would have been entitled to take. The vice lies in the unauthorized power.' (See cases cited.)

"The identical question controlling the proper construction of the provisions of the instant will, as to whether or not the class of beneficiaries is so described as to make certain the objects thereof ascertainable, has been decided in the well-considered case of Moran v. Moran, 104 Iowa, 216 (73 N. W. 617, 65 Am. St. R. 443, 39 L. R. A. 204), in construing the will then under consideration, in these words: 'I will and bequeath . . to be divided among the Sisters of Charity, by Wm. Tooney, Wm. Moran, and Rev. H. V. Malone, five hundred dollars'; the court saying: 'We do not question the rule that it is competent for a testator to bestow a charity on a person or institution to be chosen by a trustee or executor, and that such bequests will be upheld. It is an historical fact, of which we may take notice, that Sisters of Charity are general throughout the State and country. It appears in evidence that they constitute a charitable sisterhood of the Catholic Church. The provision of the will is that the bequest is to be "divided among the Sisters of Charity." If the bequest should be sustained, how would the trustees execute it? No one would say that it should be divided among all of them; for such, in reason, could not have been the intention. There is no limitation as to locality, State or Nation. We infer that appellees think the trustees may select to whom the bequest shall be given. The will does not so provide. In Lepage v. McNamara, 5 Iowa, 124, with a very similar question under consideration, as to the legal proposition it is said: "If there is such uncertainty as that it can not be known who is to take as beneficiary, the trust is void; and the heirs, by operation of law, will take the estate stripped of the trust." That rule is decisive of this question. There is no attempt in argument to say who the beneficiary of this bequest is, in language less uncertain than the will itself. There is no contention that the will is sufficiently specific, if the trustees may not use a discretion, and no such right is granted. The be-

quest is void for uncertainty.' To same effect ' see Hadley *v.*
Forsee, 203 Mo. 418 (101 S. W. 59, 14 L. R. A. (N.S.) 49);
Wheelock *v.* American Tract Society, 109 Mich. 141 (66 N. W.
955, 63 Am. St. R. 578); Tilden *v.* Green, 130 N. Y. 29 (28 N. E.
·880, 14 L. R. A. 33, 27 Am. St. R. 487)."

On careful consideration this court approves and adopts the
opinion of the trial judge, and does not deem it necessary to en-
large upon it.

*Judgment affirmed. All the Justices concur, except Gilbert,*
*J., disqualified.*