HOUSTON *et al. v.* MILLS MEMORIAL HOME INC. *et al.*

No. 15871. JULY 11, 1947.

544

*Gilbert E. Johnson* and *L. L. Scott,* for plaintiffs.

*Lawton & Cunningham* and *William S. Jackson,* for defendants.

CANDLER, Justice. (After stating the foregoing facts.) The only question presented for determination by the writ of error is whether the will of Mary Ellen Richardson created a valid charitable trust by the use of the language, "for the benefit of . . 'An Old Folk's Home.'" An affirmative answer will necessarily dispose of the present controversy, since it is not contended that the trial court's disposition of the one-half interest in the trust estate under the doctrine of cy pres (Code, § 108-202) was erroneous, provided there was no lapse of this legacy. The plaintiffs in error take the position that the designation of the beneficiary to this one-half interest in the trust fund, as "An Old Folk's Home,"

is not legally sufficient to create a charitable trust; that the language used is too indefinite and uncertain to be given effect, and even if effective, the home was not in existence at the time of the death of the testatrix; that, there being no residuary clause in the will, an intestacy resulted and there was a lapse as to this interest in the estate, which the plaintiffs in error, as the sole surviving heirs at law of Mary Ellen Richardson, are entitled to take by operation of law.

"A devise or bequest to a charitable use will be sustained and carried out in this State; and in all cases where there is a general intention manifested by the testator to effect a certain purpose, and the particular mode in which he directs it to be done shall fail from any cause, a court of chancery may, by approximation, effectuate the purpose in a manner most similar to that indicated by the testator." Code, § 113-815. "Equity has jurisdiction to carry into effect the charitable bequests of a testator, or founder, or donor, where the same are definite and specific in their objects, and capable of being executed." § 108-201. "When a valid charitable bequest is incapable for some reason of execution in the exact manner provided by the testator, donor, or founder, a court of equity will carry it into effect in such a way as will as nearly as possible effectuate his intention." § 108-202. Under the Code, the following are among the subjects declared to be proper matters of charity for the jurisdiction of equity: relief of aged, impotent, diseased, or poor people; and "other similar subjects, having for their object the relief of human suffering or the promotion of human civilization." § 108-203.

Relief of the aged is generally recognized as a proper object of charity (14 C. J. S. 447, § 16; 10 Am. Jur. 637, § 68), and specifically recognized as such by our Code, § 108-203. And the fact that poverty is not imposed as a condition to the receipt of benefits under such a charity does not invalidate the bequest. 3 Scott on Trusts, 1979, § 369.3. "Charity is not confined to the relief of poverty or distress, but has a wider signification, which embraces the improvement and promotion of the happiness of mankind." Barr v. Geary, 82 Ind. App. 5 (142 N. E. 622).

Certain principles to be followed by the courts in the construction of charitable bequests were laid down in the early case of *Beall* v. *Fox,* 4 *Ga.* 404, 427. It was there said: "It is a cardinal

rule in the construction of wills to give effect to the intention of the testator, when the same can be done without violating any settled principle of the law. The authorities cited at the bar, in our judgment, establish the following propositions: that in the construction of charitable bequests, the court will be liberal, so as to carry into effect the intention of the testator; that where the charitable intent can be discovered from the will, a court of equity will carry such intent into execution, and support the charitable purpose; that the court will not suffer an equitable interest to fail for want of a trustee to support it; that it never has been considered as an objection to a charitable use, because it was general, and in some respects indefinite, unless there was an uncertainty as to the amount intended to be given, or the general object of the use was of so uncertain and indefinite a character, that it could not be executed; that a court of equity has an inherent jurisdiction in cases of charitable bequests and devises; and that cases of charity in the courts of equity in England were held valid, and executed independently of, and previous to the Statute of 43 Elizabeth." And in *Beckwith* v. *Rector &c.*, 69 *Ga.* 564, 569, 570, it was held: "The rules of charitable trusts, in their establishment and administration, are very different from those that are applicable to private trusts, in giving effect to the intention of the donor and in establishing the charity. . . But if a gift is made for a 'public charitable purpose,' it is immaterial that the trustee is uncertain or incapable of taking or that the objects of the charity are uncertain and indefinite, still it will be sustained. A public charity begins where uncertainty in the recipient begins. Courts look with favor upon such trusts, and take special care to enforce them, to guard them from assault, and to protect them from abuse. 'Charity in thought, speech and deed, challenges the admiration and affection of mankind.' 'Christianity teaches it as its crowning grace and glory, and the inspired apostle exhausts his eloquence by setting forth its beauty and the nothingness of all things without it.'" In this connection, see also *Newson* v. *Starke*, 46 *Ga.* 88; *While* v. *McKeon*, 92 *Ga.* 343 (17 S. E. 283); *Huger* v. *Protestant Episcopal Church*, 137 *Ga.* 205 (73 S. E. 385); *Bolick* v. *Cox*, 145 *Ga.* 888 (90 S. E. 54); *Egleston* v. *Trust Co. of Ga.*, 147 *Ga.* 154 (93 S. E. 84); *King* v. *Horton*, 149 *Ga.* 361 (100 S. E. 103); *Hodgson* v. *Hodgson*, 150 *Ga.* 51 (102 S. E. 525); *Goree*

v. *Georgia Industrial Home*, 187 *Ga.* 368 (200 S. E. 684); *Moss* v. *Youngblood*, 187 *Ga.* 188 (200 S. E. 689); *Perkins* v. *Citizens & Southern Nat. Bank*, 190 *Ga.* 29 (8 S. E. 2d, 28); 163 A. L. R. 784.

Under the foregoing authorities, it cannot be said that the bequest here under consideration was too indefinite and uncertain to be executed. From a consideration of the entire will and the extrinsic evidence introduced at the hearing, it is apparent that the devise of one-half of the trust fund for the benefit of "An Old Folk's Home" was not intended for the benefit of any particular institution or individual, but was a devise or bequest to a general charitable use, the beneficiaries being such old colored people as might from time to time become inmates of a home for old colored people located at Savannah, Chatham County, Georgia. The evidence shows that at the time the will was executed there was an organization in existence in Savannah, Chatham County, Georgia, having for its purpose the purchase of property on which it desired and expected to erect and maintain a home for old colored people in or near Savannah; that the textatrix was a member of this organization, which was commonly referred to among the colored people as "The Old Folk's Home;" that this organization was unable to carry out its original plans and conveyed its property to the Charity Hospital at Savannah in 1927, soon after Mills Memorial Home was chartered (in 1925) as an eleemosynary institution having as its purpose the establishment and maintenance of a home for aged negroes; and that the latter institution was being operated as an old folk's home for colored people when the testatrix died October 9, 1929.

The trial judge very clearly expressed the view that we have of this case when in his judgment he said: "It is the opinion of the court that the purpose of the bequest was to provide a home for old folks and, being the bequest of a colored woman, would reasonably be construed to mean 'An Old Folk's Home' for colored people. . . At the time the will was drawn there was an Old Folk's Home for colored people holding property in East Savannah, in process of organization, of which testatrix was a member. It was very probable that testatrix had in mind the Old Folk's Home to be established in East Savannah at the time the will was drawn, and being a member of the organization, very probably knew of

the construction of the Mills Memorial Home and its purposes and for that reason concurred in the abandonment of the original plan for building an old folk's home for colored people in East Savannah. The Mills Memorial Home having succeeded to the original idea for an Old Folk's Home for colored people, she could very well have left this provision in the will so that the bequest would go to the Mills Memorial Home as a refuge for aged colored people—provided there was a failure of issue of testatrix. Under the law, the provision of the will takes effect from the date of the death of the deceased (Code, § 113-105). At that time, according to the evidence, Mills Memorial Home was 'An Old Folk's Home' constructed, endowed, and in operation, a charitable institution furnishing free of charge a very nice home for aged colored people. This bequest was a generous act on the part of testatrix, as was the construction of the Mills Memorial Home and its endowment by Mrs. Hodge. These two persons were far removed in the common affairs of life, but were each motivated by the same spirit of helpfulness to those who are not as fortunate as they, and it is a happy coincidence that this fund coming from this colored woman, may be used to supplement the trust fund of Mrs. Hodge—a generous friend of the needy and unfortunate—to help support a fine institution that well cares for and supports, aged, indigent, and helpless colored persons."

We think that this case is controlled by *Goree* v. *Georgia Industrial Home,* supra. In that case the testator provided in a codicil to his will that one-half the balance of his estate was to be paid to "the governing authorities of the Central Howard Association, same being an Orphans' Home located at Macon, Georgia." In a petition for direction it was alleged that there was no such organization or institution in the City of Macon or Bibb County, Georgia, but that one Mrs. McGann, who resided near Atlanta, was carrying on certain charitable work under the name of Central Howard Association; that the place where she lived appeared to be equipped to care for orphans, but had little or no facilities; and that the testator had contributed to this organization over a period of years. Certain persons, as heirs at law of the testator, filed an answer and cross-petition claiming that the legacy to the "non-existent Central Howard Association" had lapsed. On exceptions to the judgment sustaining the motion to dismiss the answer and cross-

petition, this court held: "1. It is apparent from the entire will and codicil that the bequest 'to the governing authorities of the Central Howard Association, same being an Orphans' Home located at Macon, Georgia,' was intended as a charitable trust for the benefit of orphans as a class, and that the designated 'governing authorities' were merely to perform the office of trustee. 2. Such being the general charitable intention of the testator, the bequest was sufficiently definite and specific to be capable of execution."

The decision in the present case is not in conflict with the rulings made in *Bramblett* v. *Trust Co. of Ga.*, 182 *Ga.* 87 (185 S. E. 72), relied upon by the plaintiffs in error. There, only "gentlewomen" were designated as the beneficiaries. The devise was held to be void for indefiniteness, and not a charitable bequest. The trust there would have applied to all women in the world, of whatever race, station, age, or class, and regardless of their wealth or need; provided *only* they were "gentlewomen," whatever that may have implied.

It is insisted by the defendants in error that the testatrix gave her executors in their capacity as trustees ample authority to apply the trust funds to any other similar object of charity in order to carry out her charitable intent; but since the executors in their capacity as trustees have declined to exercise such power, if it was in fact given by the will, and have applied to a court of competent jurisdiction for direction, it becomes unnecessary to pass upon this question.

Upon application of the principles announced, we think that the trial court properly held that the will created a valid charitable trust, not too indefinite or uncertain to be enforced by a court of equity, and therefore did not err in overruling the motion for new trial.

*Judgment affirmed. All the Justices concur, except Duckworth. P. J., and Wyatt, J., who dissent.*