MOSS *et al.* v. YOUNGBLOOD *et al.*

No. 12361.   November 23, 1938.

190

*Clement E. Sutton, I. S. Peebles*, and *Roy V. Harris*, for plaintiffs in error. *Cumming, Harper & Nixon, William T. Gary*, and *Curry & Curry*, contra.

*M. J. Yeomans, attorney-general, O. H. Dukes*, and *Hull, Barrett, Willingham & Towill*, for persons at interest, not parties.

RUSSELL, Chief Justice. ■ The court did not err in overruling the demurrers to the petition. The right to seek the direction of a court of equity in the circumstances of this case is clearly afforded by the Code, § 37-404 as follows: "In cases of difficulty in construing wills, or in distributing estates, in ascertaining the persons entitled, or in determining under what law property should be divided, the representative may ask the direction of the court, but not on imaginary difficulties or from excessive caution." Item 15 of the will as written is of doubtful meaning, the amount of the bequest therein being stated as twenty dollars in words and $20,000 in figures. As to Item 21, it is alleged in the petition: "In view

of the fact that there is no such person or legal entity as the 'University Hospital of Augusta, Georgia,' and of the further fact that it has been suggested as a claim by the defendants herein, Moss and Wynn, that there is intestacy so far as the devise to 'University Hospital of Augusta, Georgia,' is concerned, your petitioners need the assistance of the court in construing the provisions of the aforesaid twenty-first item of the will, and the direction of the court in regard to the payment of said residuum to said Georgia Railroad Bank & Trust Company, and especially as to whether or not, upon the death of the beneficiary for life under the terms of the trust, the said residuum shall then be turned over to the City Council of Augusta, or to the heirs at law of the said testatrix, or shall revert to your petitioners as executors, or their successors, as part of the estate of the deceased for further and final distribution." The petition presented a case of "difficulty in construing the will," and of "ascertaining the persons entitled," and by no means disclosed that the executors were asking direction "on imaginary difficulties or from excessive caution."

■ In the motion for new trial error is assigned on the admission of the testimony of Hon. William H. Barrett, to wit: "I prepared the will of Mrs. Mary W. Pope, and also two or three preceding wills. The testatrix by describing the legatee in item twenty-first of the will as 'the University Hospital of Augusta, Georgia,' intended to designate the hospital operated by the City Council of Augusta under the name of the University Hospital. At one time in a discussion with Mrs. Pope the question was raised of including the Medical College as well as the University Hospital, and the connection between the two was discussed and understood by Mrs. Pope." The objections were that the witness could not testify as to the intention of the testatrix, other than as expressed in the will, or as to what was discussed and understood by the testatrix in regard to the connection between the University Hospital and the Medical College. It was not urged as a ground of objection to the admission of this testimony that such was harmful to the movants. The bequest in item 21 was to the University Hospital of Augusta, Georgia, and the agreed statement of facts showed that such institution was a branch or department of the City Council of Augusta. The testimony of Judge Barrett that the testatrix, "by describing the legatee in item twenty-first of the

will as 'the University Hospital of Augusta, Georgia,' intended to designate the hospital operated by the City Council of Augusta under the name of the University Hospital," only tended to prove a fact not in dispute, since it was alleged in paragraph 21 of the petition that "there is no such legal entity as 'University Hospital of Augusta, Georgia.' On the other hand, the City Council of Augusta has heretofore constructed and now owns and operates a hospital in Augusta which is known and referred to by *all persons* as the 'University Hospital.'" This portion of paragraph 21 is admitted by the answer of these defendants, and therefore required no proof. Code, § 81-103. It is not reversible error for the judge to admit testimony "which only tends to prove a fact admitted to be true in the pleadings of the party objecting to the evidence, although the ground of objection may in itself be good in law." *Battle* v. *Braswell*, 107 *Ga*. 128 (1) (32 S. E. 838). The testimony of the same witness, that "at one time in a discussion with Mrs. Pope the question was raised of including the Medical College as well as the University Hospital, and the connection between the two was discussed and understood by Mrs. Pope," was at most irrelevant, and could not have injuriously affected the plaintiffs in error.

■ "A devise or bequest to a charitable use will be sustained and carried out in this State." Code, § 113-815. "Equity has jurisdiction to carry into effect the charitable bequests of a testator, or founder, or donor, where the same are definite and specific in their objects, and capable of being executed." § 108-201. "The following subjects are proper matters of charity for the jurisdiction of equity: 1. Relief of aged, impotent, diseased, or poor people. 2. Every educational purpose." § 108-203. "It is a cardinal rule in the construction of wills to give effect to the *intention* of the testator, when the same can be done without violating any settled principle of the law. The authorities cited at the bar, in our judgment, establish the following propositions: that in the construction of *charitable bequests,* the court will be liberal, so as to carry into effect the *intention* of the testator; that where the charitable intent can be discovered from the will, a court of equity will carry such intent into execution, and support the charitable purpose; that the court will not suffer an equitable interest to fail for want of a *trustee* to support it; that it never has been considered as an objection to a charitable use, because it was general,

and in some respects indefinite; unless there was an uncertainty as to the amount intended to be given, or the general object of the use was of so *uncertain* and *indefinite* a character, that it could not be executed; that a court of equity has an inherent jurisdiction in cases of charitable bequests and devises, and that cases of charity in the courts of equity in England were held valid, and executed independently of, and previous to the Statute of 43 Elizabeth." *Beall* v. *Fox,* 4 *Ga.* 403, 427. "A bequest to the inferior court of a county of a sum of money to be placed in the hands of four men, who are to give bond and security, whose duty it shall be to loan out said amount and pay over the interest annually to the inferior court, to pay for the education of poor children belonging to the county, and providing that no part of the principal shall be used for that purpose, is, according to the well settled rules for the exercise of the power of a court of chancery over charities, sufficiently definite and specific in its objects and sufficiently capable of execution to authorize and require our courts of chancery to give it effect. . . It is the duty of the inferior court, on its acceptance of the trust, in such case, to appropriate the money, as directed, and if any difficulties arise, or any uncertainties exist, as to the precise objects, or as to the mode of applying the fund, to apply to the chancellor, who will direct, by decree, the leading details of the scheme to be adopted." *Newson* v. *Starke,* 46 *Ga.* 88. "The rules of charitable trusts, in their establishment and administration, are very different from those that are applicable to private trusts, in giving effect to the intention of the donor and in establishing the charity. In a private trust, if the cestuis que trust are so uncertain or are so incapable of taking that they can not be identified, or can not by legal or equitable proceedings claim the benefits conferred on them, the gift will fail, and revert to the donor or his heirs. But if a gift is made for a 'public charitable purpose,' it is immaterial that the trustee is uncertain or incapable of taking, or that the objects of the charity are uncertain and indefinite, still it will be sustained. A public charity begins where uncertainty in the recipient begins. Courts look with favor upon such trusts, and take special care to enforce them, to guard them from assault, and to protect them from abuse. 'Charity in thought, speech and deed, challenges the admiration and affection of mankind.' 'Christianity teaches it as its crowning grace and glory, and the

inspired apostle exhausts his eloquence by setting forth its beauty and the nothingness of all things without it.'" *Beckwith* v. *Rector &c.* 69 *Ga.* 564, pp. 569-70.

In *Bolick* v. *Cox,* 145 *Ga.* 888 (90 S. E. 54), the bequest contained in a will was that certain funds "be paid to the Governor of the State of Georgia, and bonds issued therefor . . said bonds to be held and controlled by the Mayor and Council of the City of Macon and their successors in office, the interest of the bonds to be expended for the establishment of a free school in the limits of the City of Macon, the interest only to be used, the principal forever to remain as a fund for the purpose above specified. If the authorities of the City of Macon will not accept the trust, then in that case my executors are to turn the bonds over to the trustees of the Macon Free School, the interest to be appropriated as above directed, for the establishment of a free school in the City of Macon." The heirs at law of the testator brought a petition in which it was alleged "that there are no free schools in the County of Bibb, the public-school system having been substituted therefor, and that, in consequence of the impossibility of further carrying out the provision of the will above set forth, the property therein referred to, real and personal, should be turned over to petitioners, who are the only heirs at law of the testator." A general demurrer to the petition was sustained, and this court affirmed the judgment. In the opinion it was said: "The bequest contained in the item of the will referred to in the statement of facts is not so indefinite that it can not be enforced. *Huger* v. *Protestant Episcopal Church,* 137 *Ga.* 205 (73 S. E. 385) ; Buchanan *v.* Kennard, 234 Mo. 117 (136 S. W. 415, 37 L. R. A. 993, and note, 1007, Ann. Cas. 1912D, 50) ; 5 R. C. L. 332, § 58. See *Hills* v. *Atlanta Art Asso.,* ante, 856. The fact that there is a system of public schools in Bibb County, as there is in all the other counties in the State, in no wise interferes with the execution of the design of the testator that a free school should be established with the income from the bounty bequeathed. If the free school contemplated by the testator were exactly of the same character as the free schools now established under the laws of force in this State, it would not necessarily follow that there was no school which could take advantage of the testator's bounty; and it does not necessarily follow from the use of the expression 'free school,' nor is it inferable

therefrom, that the free school contemplated by the testator is limited in its educational scope, or that it is of the precise character as the public schools established by the laws of Georgia. There could be no serious trouble in carrying out the real intention and design of the testator. It may require some consideration of the details, though with that we are not concerned. If the present use of the income arising from the fund accumulated under the testator's will is an improper diversion thereof, a continued diversion can be prevented by proper proceedings in the superior court. The improper diversion affords no reason why the trust should be declared void and the fund itself turned over to the heirs." It was ruled in *Hodgson* v. *Hodgson,* 150 *Ga.* 51 (102 S. E. 525): "In the fifth item of a will the testator made provision for the creation of a fund to be held by the executors as a trust fund, and gave directions as to the use and employment of a part of it. It was then provided: 'And from the rest and residue of this fund of two shares, and after said special bequests have been paid, there shall be made annually, as long as it shall last, liberal donations for charitable purposes, especially Decatur Orphans' Home, and assistance to homes for fallen women in Georgia.' *Held,* that under à proper construction the executors were authorized to make donations from such fund to other charitable purposes, institutions, persons or individuals who in their judgment are deemed subjects of charity, as well as to the Decatur Orphans' Home and homes for fallen women in Georgia."

In *Goree* v. *Georgia Industrial Home,* 187 *Ga.* 368 (200 S. E. 684): "A testator provided in his will, that, after the payment of various items specified, the remainder of his estate should be 'paid over to the governing authorities of the Central Howard Association, same being an Orphans' Home located at Macon, Georgia.' By a codicil this item was stricken and the following was substituted: 'When my entire estate has been reduced to cash, and after the payment of the various items heretofore set forth, the balance thereof, after the payment of all legal costs and charges against my estate, is to be divided into two equal parts, and one of said parts, that is half of the balance of said estate, is to be paid over to the governing authorities of the Central Howard Association, same being an Orphans' Home located at Macon, Georgia, and the other part, that is half of the balance of said estate,

is to be paid over to the governing authorities of the Georgia Industrial Home, same being an Orphans' Home located at Macon, Georgia.' " It was alleged in petition for direction, filed by the executor of the will, that there was no such organization or institution as Central Howard Association in the City of Macon or Bibb County, Georgia, but that one Mrs. McGann, who resided near Atlanta, advised the executor that, under the name of Central Howard Association, "she was carrying on or continuing certain charitable work begun by her husband, who, according to Mrs. McGann, died some years ago. . . The place where Mrs. McGann lived did not appear to be equipped to care for orphan children, and had little or no facilities for work of this sort. Petitioner shows that following said interview with said Mrs. William T. McGann, a man by the name of C. A. London, who stated he is a resident of the City of Atlanta, called on petitioner and stated he had solicited contributions from the testator, Mr. W. E. Withers, over a period of years on behalf of the Central Howard Association. That said C. A. London stated he did not advise the testator that said Central Howard Association was located at Macon and stated he did not know how the testator received the impression that said Central Howard Association was located in that city. . . In these circumstances petitioner does not know whether the said Mrs. William T. McGann and said C. A. London are operating an orphans' home called Central Howard Association, but . . if they are operating an orphans' home called Central Howard Association, the same is not located in Macon, Georgia, as designated in said will. . . By reason of the facts heretofore recited, petitioner as executor of the estate of W. E. Withers desires the direction of this court in the distribution of the portion of said estate which is bequeathed in said will to the Central Howard Association, an Orphans' Home located in Macon, Georgia, in order that petitioner upon such judicial construction and determination of said will may safely distribute said fund upon a judgment of this court." Certain persons, as heirs at law of the testator, filed an answer and cross-petition, claiming that said legacy had lapsed, and praying that the court declare an intestacy as to that portion of the estate bequeathed "to the non-existent Central Howard Association," and that the executor be directed to pay the entire amount of this bequest to the heirs at law. The court sustained motions to dis-

miss the answer and cross-petition, and this court affirmed the judgment, ruling: "1. It is apparent from the entire will and the codicil that the bequest 'to the governing authorities of the Central Howard Association, same being an Orphans' Home located at Macon, Georgia,' was intended as a charitable trust for the benefit of orphans as a class, and that the designated 'governing authorities' were merely to perform the office of trustees. 2. Such being the general charitable intention of the testator, the bequest was sufficiently definite and specific to be capable of execution. 3. Since a trust will not fail for the want of a trustee, the legacy would not lapse merely because there may have been no such orphans' home in the City of Macon or elsewhere as Central Howard Association, and no such 'governing authorities' as were mentioned in the will. 4. In such a case a court of equity may, by approximation, effectuate the general charitable purpose of the testator in a manner most similar to that indicated by him. 5. In the instant suit by the executor for direction, heirs at law of the testator had no interest in such legacy, and the court did not err in striking the answer and cross-petition filed by them."

We think it manifest from the above authorities that bequests for charitable purposes are looked upon with great favor by the courts of this State, and that every means will be resorted to which can legally be used to carry out a charitable intent manifested by a testator in his will. Item 21 names as the legatee the "University Hospital of Augusta, Georgia," and specifies that the bequest is to be used "for the further development and more efficient service of such institution." "A hospital, however, is not, any more than a drug-store, a charitable institution per se; and in order for a devise or gift establishing a hospital to come within the classification of a charitable institution, the terms of the gift must themselves require that it be operated in whole or at least in substantial part for the gratuitous relief of its inmates." *Trust Co. of Ga.* v. *Williams,* 184 *Ga.* 706, 708 (192 S. E. 913). Counsel for the plaintiffs in error, in a reply brief, discuss the question, "Will the rule laid down in *Williams* v. *Trust Company of Georgia,*" supra, "which requires that 'the *terms of the gift*' define the classification of the charity when the gift is made for the establishment of a charitable institution, apply to an institution already functioning as a charitable institution?" Counsel say: "We think it is unques-

tionably true that if a hospital has been once established as a charitable enterprise by charter, whether obtained from the legislature or the courts, by a valid deed or will, and the purposes of the institution are clearly defined by the instrument creating the charity, that after such institution is once established a gift may be made to it, if a legal entity, without the terms of the gift requiring that the hospital be operated in whole or in part gratuitously." The position of counsel appears to be that a hospital can be shown to be a charitable institution only when the instrument creating it so requires. No authority is cited for the proposition, and we. have been unable to find any, and it is in conflict with the rule stated in 30 C. J. 462, § 1, as follows: "The test which determines whether a hospital is charitable or otherwise is its purpose, that is, whether it is maintained for gain, profit, or advantage, or not. And the question of whether a hospital is maintained for the purpose of charity or for that of profit is to be determined, in case the hospital is incorporated, not only from its powers as defined in its charter, but also from the manner in which it is conducted. Where a hospital can otherwise be classed as a charitable institution, the fact that patients who are able to pay are required to do so does not deprive it of its charitable character." There is no corporate entity in the City of Augusta by the name "University Hospital of Augusta, Georgia," and therefore no charter which can throw light on the purpose for which the institution was created. So we think the question whether the hospital thus designated by the testatrix is maintained for the purposes of public charity or for that of profit is to be determined from the manner in which it is conducted. The agreed statement of facts is in part as follows: "That the board of trustees of the University Hospital of Augusta, Georgia, manages and administers the affairs of the hospital for the relief of diseased people; that the hospital is not operated for profit; that in the year 1936, independent of appropriations for its support, the hospital was operated at a loss of $138,862.98;" that during this year there was administered in said hospital 51,128 exclusive free patient hospital days at a cost to the hospital of $178,232.21; there were 4,177 exclusively free patients in the hospital; there were 47,383 treatments administered in the free clinic of the hospital; there were 20,474 free calls made to homes of diseased and sick persons by "city physicians" who operate

through the hospital; there were 20,877 prescriptions filled at the hospital dispensary through the hospital free clinic, and 24,884 prescriptions filled for free patients through the "city physicians;" that the expenses of the hospital are paid from appropriations made by the City Council of Augusta, supplemented by charges made patients who are able to pay for their hospitalization; "that the appropriations made by the City Council of Augusta are for the purpose of caring for the sick and needy people of Augusta; that for a number of years the appropriations made by the City Council of Augusta have been $90,000 per year; that the hospital by and through its board of trustees renders hospital service free of charge to such residents of Augusta as are unable to pay the charges; that the practice of charging those patients who can pay and rendering a gratuitous service to patients who can not pay and reside in Augusta has prevailed since the hospital was organized to the present time. The hospital has never been operated on a profitable basis, and the appropriations are for the purpose of paying the expenses of treatment to free patients. The services rendered by the hospital are those which are actually and generally found in modern hospitals. The services specified are rendered without charge to the poor people unable to pay for such services who reside in the City of Augusta and Richmond County, but all persons able to pay for hospital services even though residing in Augusta and Richmond County are required to pay therefor. . . The medical and surgical control of the University Hospital was from 1911 to September, 1936, by contract with the City Council of Augusta and Medical Department of the University of Georgia vested in the said medical department. The hospital thus maintained and operated has been known for many years as the University Hospital of Augusta, Georgia, and has been referred to as such in common parlance, newspaper reporting and in resolutions of the City Council of Augusta. There is no other hospital in August bearing that same name."

Under the authorities heretofore referred to, the judge was authorized to find that under the will and the agreed statement of facts the hospital owned and maintained by the City of Augusta, commonly known as the "University Hospital of Augusta, Georgia," and thus designated in item 21 of the will here involved, was a charitable institution, owned by said city and maintained pri-

marily for the gratuitous treatment of the sick and needy of the City of Augusta and Richmond County, and that by said item the testatrix intended the remainder estate therein bequeathed to be applied to the promotion of the charitable objects of such hospital.

As stated in 10 Am. Jur. 610, § 37: "There is a broad distinction between a gift direct to a charity or charitable institution already established and a gift to a trustee to be applied by him to a charity. In the first case the court has only to give the fund to the charitable institution, which is merely a ministerial or prerogative act; but in the latter case the court has jurisdiction of the trustee, as it has over all trustees, to see that he does not commit a breach of his trust or apply the funds in bad faith to purposes foreign to the charity." Whether by the direction contained in item 21 of Mrs. Pope's will that after the death of Letty Pope "the entire corpus shall be turned over in fee simple to the University Hospital of Augusta, Georgia, to be used for the further development and more efficient service of such institution," the testatrix intended to make a gift "directly to a charity or charitable institution," or a gift "to a trustee to be applied by him to a charity," is not now for determination. The institution known to Mrs. Pope as the University Hospital of Augusta, by the record before the court, was shown to be a hospital owned and maintained by the City of Augusta primarily for the treatment, without compensation, of the sick and needy people of Augusta and Richmond County, and the bequest was that the fund bequeathed be used "for the further development and more efficient service of such institution." This bequest having been held to be valid, the heirs at law have no interest in the property therein bequeathed. "There could be no serious trouble in carrying out the real intention and design of the testator. It may require some consideration of the details, though with that we are not concerned." *Bolick* v. *Cox,* supra.

■ Since,. under what is ruled in the preceding division, item 21 provided a valid bequest for charitable purposes, the City Council of Augusta was competent to receive the fund under the Code, which declares: "All incorporated towns and cities are authorized to receive any donations or gifts of real or personal property which may be made to them by deed of gift, will, or otherwise, and subject to such conditions as may be specified in the instrument

giving or donating the property, if the governing body of such town or city shall approve of such conditions." § 69-501. "The incorporated towns and cities may act as trustees under any conveyance or will donating or giving property for charitable or eleemosynary purposes." § 69-502.

■ The bequest contained in item 21 does not fail because there is no legal entity of the name used therein to designate the beneficiary. In 69 C. J. 152, § 1182, it is said: "Where a beneficiary under a will is not designated with precision, parol evidence is generally admissible to aid the court in identifying him, and for this purpose evidence of the circumstances surrounding the testator is competent. Likewise where the will contains a latent ambiguity as to the person intended as the object of the testator's bounty, arising, for example, by reason of the fact that the designation of the beneficiary is applicable either in whole or in part to two or more persons, or from the fact that the name or description of no claimant exactly corresponds to that given in the will, but one or more imperfectly do correspond, extrinsic evidence is admissible to show who was intended. Thus extrinsic evidence is admissible to point out the person or persons intended by showing that the designation used by the testator was claimant's nickname, or assumed name, *or that it was the name by which testator always referred to claimant.*" It appears from the agreed statement that the hospital owned and maintained by the City Council of Augusta was referred to by all as the "University Hospital of Augusta," and that there was no other hospital by that name in Augusta. In Page on Wills (2 ed.), § 916, it is stated: "A more difficult question is presented where the name given in the will is not the name of any existing corporation. If such corporation can be identified by its location the misnomer will not invalidate the gift. A devise to the 'Congregational Seminary at Forest Grove in Washington County, State of Oregon,' was held to mean the 'President and Trustees of Tuslatin Academy and Pacific University,' where such institution had established a Congregational Seminary at Forest Grove and there was no other seminary there. A bequest to the 'Presbyterian Infirmary' situated on a certain street was held to mean the 'Union Protestant Infirmary' situated on the named street. But there was no other organization which could have taken under this bequest. . . In some of these cases the location as

well as the purpose helps to identify the beneficiary. In some cases the name which appears in the will is very different from that of the intended beneficiary, but other means of identification may show what beneficiary is intended." In at least two cases in Georgia it has been held that a beneficiary need not be designated by name, if sufficiently described otherwise. It was ruled in *Cheney* v. *Selman,* 71 *Ga.* 384: "A legatee need not be named, in order to give effect to the bequest; it is sufficient that he be so designated as to identify him. A bequest being to the 'children' of a testator, it may be shown by parol who such children are. Such description is a latent ambiguity, and explainable by parol." In *Hills* v. *Atlanta Art Asso.,* 145 *Ga.* 856 (89 S. E. 1084), item 7 of the will under consideration was as follows: "I hereby will and bequeath to........ an undivided one-half interest in all my right and title to" described land in Gilmer County, Georgia, "in compensation of services rendered by him in clearing title to said property." It was ruled: "The seventh item of the will is not necessarily void because it does not contain the name of the beneficiary to whom it was the intention of the testator a legacy should be given. 40 Cyc. 1447, and citations. The court properly directed the administrator to examine the records of Gilmer superior court, and to make such other investigation as he was able, in order to ascertain and make certain the name of the person who rendered the services mentioned in item seven of the will." The agreed statement in the instant case made certain the beneficiary intended by the testatrix in item 21, naming the University Hospital of Augusta, Georgia.

In view of the ruling heretofore made, that the disposition made by the testatrix in item 21 as to the residuum of the estate after the death of the life-tenant is valid, it is unnecessary to determine the correctness of the court's construction of the bequest to William Youngblood, contained in item 15. Had a contrary conclusion been reached by this court as to item 21, the plaintiffs in error would have been benefited by a reversal of the construction placed on item 15 by the trial court; but since item 21 has been held valid, the plaintiffs in error take no part of the estate. Had the court construed item 15 to bequeath $20 instead of $20,000, the $19,980 difference would have added to the income of the life-tenant, and to the corpus of the estate to be paid the remainder

beneficiary of item 21. Since item 21 is to be given effect, only Letty Pope, the life-tenant, and the City of Augusta, the remainder-man, would benefit by a reversal of the court's construction of item 15. Both Letty Pope and the City of Augusta were parties defendant in the proceeding brought by the executors, and both filed answers. In the answer of Letty Pope she "consents to the court so construing this provision of the will as to decree that William Youngblood should receive as his bequest under the will twenty thousand dollars," and a similar statement is contained in the answer of the City Council of Augusta. The court did not err in overruling the motion for new trial.

*Judgment affirmed. All the Justices concur, except Atkinson, P. J., who dissents.*