27849. TRAMMELL v. ELLIOTT et al.

HAWES, Justice. The appeal here is from an order of the Superior Court of DeKalb County entered on motion for summary judgment in a case brought by the executor of the estate of Miss Clem Boyd seeking construction of her will and direction from the court.

1. The appeal is not subject to dismissal. Appellees contend that the order appealed from is not an appealable one since the trial court denied appellant's motion for a summary judgment. The order appealed from, though it denied appellant's motion for a summary judgment, went further and granted summary judgment favorable to appellees as to several issues in the case. It is thus subject to direct appeal (Code Ann. § 81A-156 (h)), and "all judgments, rulings or orders rendered in the case which are raised on appeal, and which may affect" the case upon remand are subject to review by this court. Code Ann. § 6-701 (b).

2. The trial court did not err in ruling that there is a genuine issue of fact as to whether Angie Boyd Hansen, the appellant's testatrix, renounced her interest under

the will of Clem Boyd. The will here in question was executed by Miss Boyd on March 10, 1962. The testatrix died on April 6, 1962.

(a)  Angie Boyd Hansen, on January 22, 1963, executed a "Conditional Renunciation" in which she conditioned her renunciation on her not having a lingering illness after all her funds had been exhausted and that she not have an accident or illness or inability to care for herself which would send her to a hospital or nursing home whereby her own cash would be exhausted and she would be thereby rendered dependent on others. The only contention of appellant with respect to this purported renunciation is that it is too conditional to constitute a valid and binding renunciation. No authority is cited by appellant for this position and we are not aware of any rule of law or of any public policy which would forbid the enforcement of such attempted renouncement. The issue as to this attempted renouncement is simply whether in fact Mrs. Hansen's funds subsequently became exhausted and whether she thereby became dependent on others by reason thereof. This factual issue was properly left by the court for decision by a jury.

(b)  In October, 1964, Angie Boyd Hansen executed a purported will containing a further renouncement. It appears that that instrument has been declared to be void by reason of lack of mental capacity on the part of Angie Boyd Hansen at the time it was executed. What effect, if any, this attempted renouncement has in view of that ruling it is not necessary for us to decide at this time.

(c)  On June 28, 1965, Angie Boyd Hansen unconditionally and in the presence of three witnesses and a notary public again executed in writing a renouncement. The legal effect of this instrument may depend on her mental capacity at the time or upon other issues of fact. It follows that the first ground of

enumerated error shows no cause for reversal.

3. By Item XI of her will, the testatrix authorized her executors therein named "to sell, at private sale, my real property located at corner of Mt. Perrian Road and 'Four-Lane' Highway to Marietta from Atlanta, N. W., such sale to be made after said property is zoned for business and at such time a fair price can be obtained therefor. Should they receive an equivalent price before it is zoned for business, they still may sell at private sale, but I prefer waiting for the more advantageous time after it is zoned for business, or motel, or club. Said executors are authorized to sell this or any of my property—real or personal—at private sale without Order of Court, and without advertisement." The petitioner alleged in Count 3 of the complaint that the property referred to in this item is substantially surrounded by single family residences and that the possibility that it can be zoned for business is very slight and that under the conditions prevailing the sale of the property at private sale can bring the best price. In ruling on the executor's plea for direction with respect to this item the trial court did not err in holding that the executor could sell the property therein referred to at private sale "if he in his discretion determines a private sale will be more advantageous to the estate."

4. "The natural and reasonable presumption is that a testator in executing a will intends to dispose of his whole estate and not to die intestate as to any part of it, and this presumption is overcome only where the intention to do otherwise is clear and unambiguous or is necessarily implied. *Armstrong v. Merts,* 202 Ga. 483 (4) (43 SE2d 512); *Schriber v. Anderson,* 205 Ga. 343 (53 SE2d 490)." *Lewis v. Mitchell,* 216 Ga. 526 (1) (117 SE2d 901). Accordingly, where, as in this case, the testatrix devised in the residuary clause, Item X of her will, "all funds remaining after the aforementioned bequests

are made or set aside" to be applied to certain purposes, the use by her of the word "funds" was properly held to have been in the generic sense, for otherwise, as to some of the remaining assets, an intestacy would have resulted had any narrower construction been given that term. See *Bivins v. State,* 47 Ga. App. 391, 392 (170 SE 513). Under the facts of this case, the construction of this item of the will was for the court and not for a jury. *Watts v. Finley,* 187 Ga. 629 (5) (1 SE 723); *Armstrong v. Merts,* 202 Ga. 483 (1) (43 SE2d 512); *Collier v. Citizens & Southern Nat. Bank,* 206 Ga. 857 (59 SE2d 385).

5. We now approach the central issue of this appeal. In Item X of the will of Clem Boyd, there is recorded the desire that an educational scholarship fund be established in memory of the deceased's parents. This provision is, in its entirety, as follows: "All funds remaining after the aforementioned bequests are made or set aside, I wish made into an Endowment or Scholarship Fund in memory of my parents, the late William and Frances McCord Boyd, of Newton County, Georgia, said fund to be known as the Boyd-McCord Memorial Scholarship and placed with the Trustees of the Georgia Institute of Technology, Emory University, and Agnes Scott College, in equal proportions, to manage and keep reports on same. This scholarship is set aside *for benefit of deserving and qualified poor white boys and girls,* and interest only is to be used for said scholarships. However, should any proven descendant of my parents qualify and apply for benefits of this scholarship, it is my desire that they be given preference, and, if need be, go into the principal to the amount of $500.00 per scholastic year of four years for said descendant if earnestness is indicated and courses taken leading to a degree." (Emphasis supplied.)

Although two of the named universities to act as trustees

of the funds are private institutions, the Attorney General representing the Board of Regents of the University System of Georgia has conceded the requisite state interest with regard to the trust administration on behalf of the Georgia Institute of Technology. We proceed, therefore, on the basis that there is sufficient state action involved to invoke the strictures of the Fourteenth Amendment of the United States Constitution and that the racial restrictions in the devise may not be enforced save in violation of equal protection of law. Evans v. Newton, 382 U. S. 296 (86 SC 486, 15 LE2d 373) (1966); Pennsylvania v. Bd. of Directors of City Trusts, 353 U. S. 230 (77 SC 806, 1 LE2d 792) (1957). See, also, Sweet Briar Institute v. Button, 280 FSupp. 312 (W. D. Va. 1967). The single issue before the court with regard to the devise is whether the trial court erred in applying the doctrine of cy pres to exclude the offensive and discriminatory classification of the beneficiaries of the trusts and to effectuate the devise on the basis of an otherwise nondiscriminatory administration of the trusts.

The rule of law commonly termed the doctrine of cy pres is codified in the law of Georgia in two separate sections of the Code. These sections are as follows: "When a valid charitable bequest is incapable for some reason of execution in the exact manner provided by the testator, donor, or founder, a court of equity will carry it into effect in such a way as will as nearly as possible effectuate his intention." Code § 108-202. "A devise or bequest to a charitable use will be sustained and carried out in this State; and in all cases where there is a general intention manifested by the testator to effect a certain purpose, and the particular mode in which he directs it to be done shall fail from any cause, a court of chancery may, by approximation, effectuate the purpose in a manner most similar to that indicated by the testator." Code § 113-815.

The public policy expressed in these provisions favoring the validation of charitable trusts is supported by the longstanding rule of construction of this court by which forfeitures because of restrictive conditions attached to grants or devises of property are not favored, and as well by related Code provisions immunizing such trusts from the Georgia law against perpetuities. Code Ann. § 85-707. See *Hardage v. Hardage,* 211 Ga. 80 (84 SE2d 54) (1954).

As a general rule, the doctrine of *cy pres* is applied in cases (1) where there is the presence of an otherwise valid charitable grant or trust; that is, one that has charity as its purpose and sufficiently offers benefits to an indefinite public; (2) where the specific intention of the settlor may not be legally or practicably carried into effect; and (3) where there is exhibited a general charitable intent on the part of the settlor. See, e.g., *Creech v. Scottish Rite Hospital,* 211 Ga. 195 (84 SE2d 563) (1954); *Moss v. Youngblood,* 187 Ga. 188 (200 SE 689) (1938); *Goree v. Georgia Industrial Home,* 187 Ga. 368 (200 SE 684) (1938); Restatement, Second, Trusts, Vol. 2, p. 297, § 399, and Note, Cy Pres, Discriminatory Charitable Trusts in Georgia, 6 Ga. S. B. J. 428 (1970). In determining at the outset whether there is exhibited a valid charitable purpose, the court is to look to Code §108-203 wherein are listed the legitimate subjects of charity in Georgia. This Code provision includes, for example, for purposes of this appeal, "1. Relief of aged, impotent, diseased, or poor people. 2. Every educational purpose," among other legitimate subjects. Secondly, the court is to consider, from the instrument itself, whether there is exhibited a general charitable intent. See *Hines v. Village of St. Joseph,* 227 Ga. 431 (181 SE2d 54) (1971). The existence of a general charitable intent is inferred upon the establishment that the grant conforms in subject matter to any of the legitimate subjects of charity described in Code §

108-203. However, in deference to the intent of the testator, cy pres will not be applied where there is demonstrated an intention of the settlor contrary to the inference of general charitable intent that the property should be applied exclusively to the purpose which is or has become impracticable or illegal. *Evans v. Abney,* 224 Ga. 826 (165 SE2d 160) (1968). See, also, Restatement, Second, Trusts, Vol 2, p. 299, § 399, Comment c, and IV Scott on Trusts (3d Ed. 1967), p. 3094, § 399.2. In view of the public policy expressed in Code §§ 108-202 and 113-815 favoring the effectuation of charitable grants promoting the public good and our own rule disfavoring forfeitures, such demonstration of a specific intent of the settlor as would result in a failure of the devise must be clear, definite, and unambiguous. In such event the trust will fail, and a resulting trust will be implied for the benefit of the testator or his heirs. Code § 108-106.

In viewing the will of Clem Boyd, the trusts established in Item X conformed in subject matter to those legitimate subjects of charity as found in Code § 108-203, being for the poor and for educational purposes. The purpose was one which offered a benefit to the general community, thereby qualifying as a public trust even though a preference is given to the relatives of the testator. Cp. *Hardage v. Hardage,* 211 Ga. 80, supra. We infer from this that the testatrix possessed the requisite charitable intent as would authorize the use of cy pres to remove the discriminatory classification of the beneficiaries.

The appellant has argued on the basis of *Evans v. Abney,* 224 Ga. 826, supra, however, that the mere existence of the racial classification was sufficient to rebut the inference of general charitable intent. This argument is not, we believe, of substance. In *Evans* we held that from the contents of the will, in addition to the provisions for racial restrictions on the use of a park,

there was exhibited an intention on the part of the testator which would preclude the use of such park in any manner except that as exclusively and clearly demanded by the testator. *Evans,* therefore, upon its facts, stood for the recognized exception in the use of cy pres whereby from the will the specific intent of the testator conclusively negated any general charitable intention.

The will in the present case did not contain language by which the testatrix intended that the charitable trusts be administered exclusively in the manner prescribed. Other evidence supportive of the establishment of a specific and exclusive intention was also absent from the will, for there was no provision in the devise, for example, for a reverter clause or an alternative gift over in the event of a failure of the grant. On the other hand, in other parts of the will, the testatrix indicated strongly that she desired that no provision of the will should fail and the funds as set aside revert to her heirs. In Item IX, she noted in this regard that "Adults do not need my life's earnings, and the children who need a college education are the ones who interest me most."

We conclude from the foregoing that the evidence on summary judgment was conclusive of the trial court's finding of a general charitable intent on the part of the testatrix and that the doctrine of cy pres was correctly applied in excluding the illegal racial classification from the charitable grant.

6. Under the foregoing ruling, it is unnecessary to pass upon the remaining contention of the appellant that the devise under Item X of the will violates the rule against perpetuities.

*Judgment affirmed. All the Justices concur, except Jordan, J., who dissents from Division 5 and from the judgment of affirmance.*

ARGUED APRIL 10, 1973 — DECIDED JULY 2, 1973 —

Rehearing denied July 17, 1973.

R. John Genins, for appellant.

*Dan. E. Conaughey, John E. Nix, Lokey & Bowden, Alston, Miller & Gaines, Robert G. Edge, Ann W. MacLean, Arthur K. Bolton, Attorney General, Timothy J. Sweeney, H. Andrew Owen, Jr., Assistant Attorneys General,* for appellees.