### 31803. SMYTH et al. v. ANDERSON et al.

INGRAM, Justice.

This is a multifid dispute arising from the will of John P. Upshaw. The testator executed his will on April 29, 1931, died on January 16, 1937, and the will was probated on February 1, 1937. The testator was survived by his wife and one child, a daughter, who was married at the time of the testator's death. The married daughter had no children born to or adopted by her at the time of the testator's death. However, she later adopted a daughter on July 9, 1940, and this daughter is an appellant in this case and claims the entire remainder estate of John P. Upshaw under his will. If her claim is sustained in this appeal, this disposes of the case. If the adopted daughter of the testator's only child does not have a valid claim to the testator's estate, there remains for decision what disposition is to be made of the property under the will.

We must examine the material portions of the will itself to understand the conflicting claims to the remainder of the estate devised under the will. The most material provisions of the will are found in Items 5 and 6, which read as follows:

"Item 5. I give and bequeath unto my wife, Bertha Upshaw, an one-half undivided interest in and to all of my farm land and any other real estate I may own at my death, for her sole and separate use and benefit, for and during her natural life; and at her death unto my daughter, Nell, for and during her natural life; and at her death unto her *children.* I give and bequeath unto my daughter Nell, the other one-half undivided interest in and to all my farm lands and any other real estate I may own at my death for her sole and separate use and benefit, for and during her natural life; and after her death unto her *children.* In the event my daughter, Nell, dies without leaving *child* or *children,* before the death of my wife, Bertha, then in that event my wife is to have for her sole and separate use and benefit for during her natural life said one-half undivided interest in my said farm lands

and any other real estate I may own.

"Item 6. In the event my daughter, Nell, dies without *child,* or *children,* and any of my brothers or sisters, or my sister-in-law, Emma Turnipseed, be living, then in that event my farm lands are to go to them for and during their natural lives, and at the death of the last remaining one of them, I give and bequeath the income from my plantation, known as the 'Home Place' of 490 acres, and the Anglin Place of 250 acres, in Walton County, Georgia, to the Social Circle Schools, for the benefit of the white *children* of the Social Circle Militia District, inclusive of the Town of Social Circle.

"I name and appoint the acting trustees of the Social Circle Schools as trustees to manage said plantations, and disburse the profits therefrom as above indicated.

"In the event said property is not accepted by said Social Circle Schools or used for any other purpose than above indicated and directed, it is to revert to my estate and go to my next of kin."

Appellant Smyth, as the adopted daughter of the testator's only child, contends that she is a child of the testator's daughter within the contemplation of the testator and was intended by him to be included in the term "children" which he used in disposing of the remainder of his estate.

The other appellants, Arthur Francis Gannon and the Fulton National Bank of Atlanta, are the executors of the will of testator Upshaw's daughter, Nell Upshaw Gannon. They join the appellees in contending that appellant Smyth is not entitled to the testator Upshaw's remainder estate because she is not a child within the meaning of the term "children" as that term was used in the will of John P. Upshaw. In other words, they claim that the testator did not intend to include an adopted child of his daughter in his bounty but only a natural child. If they are correct, appellant Smyth takes no part of the remainder of the estate and the dispute passes to the other parties.

If we reach the secondary dispute, it essentially boils down to whether the cy pres doctrine can be correctly applied to the trust provisions in this will or not. If it can, the appellees, as trustees for the Social Circle School

System, will receive the remainder of John P. Upshaw's estate. If not, the remainder estate will go to the appellant executors to be distributed to the "next of kin" of the testator under Item 6 of the will.

We turn first to the claim of the adopted daughter of the testator's only child, the claim of appellant Smyth to the remainder of the testator's estate. The trial court held that the will of John P. Upshaw must be construed under the laws in effect at the time of his death and that under the law then extant the adoption of a child by the testator's daughter after his death did not make the adopted child a grandchild of the testator.

But appellant Smyth argues that, nevertheless, the testator intended to include her in the terms "child" and "children" which he used in Item 5 of the will. She contends that the will itself shows the testator knew his natural daughter was married and that, since she had no children at the time he made his will, he contemplated that she might adopt a child after his death. She also argues that if the remainder of the estate goes to the trustees for the Social Circle School System, the school "children" who would benefit from it would be both natural and adopted children attending the school. Therefore, she says, the use of the word "children" in the will shows the testator intended to include natural and adopted children in each instance where he used the term "child" or "children" in his will.

Appellant Smyth also relies on *Brown v. Trust Co. of Ga.,* 230 Ga. 301 (196 SE2d 872) (1973), and *Whittle v. Speir,* 235 Ga. 14 (218 SE2d 775) (1975), to support her position. *Brown* dealt with whether a testator intended the law in effect at the time of the termination of a trust created in his will be applied to determine whether an adopted child was a member of the beneficiary class when the trust terminated. This court held that the testator's language used to create the trust showed an intention to have the law in effect at the time the trust terminated to be applied in determining the class of beneficiaries. Thus, it was determined that an adopted child was included as a member of the benefited class.

The court went on to say in *Brown* that, "where a trust is created so as to terminate at some future date

when a class of beneficiaries is to be determined, unless the trust instrument itself provides expressly that a statutory rule other than that in effect at the date of termination shall be applied, then the statutory rule in effect at the date of the termination of the trust shall be applied." 230 Ga. 303. Subsequently, this court applied the rationale of the *Brown* decision to a will case in *Whittle v. Speir,* supra, and determined that an adopted grandchild of the testator took the interest of his father under the grandfather's will. However, there the child had been adopted during the lifetime of the testator. In addition, after his son adopted the child, the testator made a codicil to his will in which no provision was made either to include or exclude the adopted child of his son. Under these circumstances, the testator's adopted grandchild was held to be a beneficiary under the will.

The situation we face in this case is different. Here, the testator knew at the time of his death that his only child was married but had no children either born to or adopted by her at that time. Under Georgia law applicable when the testator executed his will and when he died, an adopted grandchild was not considered to be legally related to the testator. Thus, it is difficult to see how the testator intended to include in this will a person who would not be a legal heir under the law at the time and who did not even exist at the time of his death.

We think the present case is more in line with *Wilson v. Ingram,* 207 Ga. 271 (61 SE2d 126) (1950). In *Wilson,* an adopted child's claim was denied by this court in holding that the testator's will had to be construed according to the law in effect at the time of the testator's death. Therefore, a favorable statutory change in the adoption law after the testator's death was determined insufficient to find in favor of the adopted child. *Wilson* stands for the proposition that a will is construed according to the law in effect at the testator's death. We reaffirm the correctness of this rule and find it applicable unless the will indicates a contrary intention by the testator. We find no such contrary intention manifested by the testator in this case.

As said by this court in *Wilson,* " 'In the matter of construing the rights of an adopted child to take under a will, it should be borne in mind that it is not a question of

the right of an adopted child to inherit, but simply a question of the testator's intent with respect to those who are to share in his estate. The disposition of the courts is to confine and limit the word "children" in its application, when it occurs in a will, to its natural import, excluding adopted children, except where the testator has clearly shown by other words that he intended to use the term in a more extensive sense.' 1 Am. Jur. 664, § 64, and quoted with approval in *Comer v. Comer,* [195 Ga. 79, 87 (23 SE2d 420) (1942)], and *Brookins v. Citizens & Southern National Bank,* [205 Ga. 128 (52 SE2d 461) (1949)]. 'The ordinary and popular and legal sense of the word "children" embraces only the first generation of offspring; and for it to be extended further, there must either be something in the context showing that a larger signification is intended, or the person using it must know that there neither then is, nor can afterwards be, any person to whom the term can be applied in its appropriate sense.' *Willis v. Jenkins,* 30 Ga. 167 [1860]." *Wilson,* supra.

Of course, there have been substantial revisions in the Georgia law on the inheritance right of adopted children which might render a great deal of what was said in the quoted language from *Wilson* inapplicable to the case of a testator dying today. See Code Ann. § 74-414 (Ga. L. 1966, p. 212; Ga. L. 1969, p. 927). Under this Code section, an adopted child is now deemed to be a natural child of its adoptive parents under the testacy and intestacy laws of this state. But we apply to the present will the law in effect at the testator's death, since we find no indication that he intended otherwise.

The language of the present will leads us to conclude that this testator, John P. Upshaw, did not have in mind an adopted grandchild whose adoption occurred after his death. Therefore, we hold that appellant Smyth is not included in the terms "child" or "children" used in Item 5 of the will. Similarly, we reject the argument that if the trust for the benefit of the children of the Social Circle School System becomes effective, both natural and adopted children will benefit from it and therefore the term "children" as used in Item 5 of the will necessarily means natural and adopted children. We think the testator in speaking of the school children was merely

referring to the students of the school system as a group. This reference does not shed light on whether the testator intended to include an unadopted grandchild in the bequeathing provisions of the will contained in Item 5. Therefore, the trial court was correct in ruling adversely to appellant Smyth's claim.

The final question presenting itself for resolution is whether the trial court erred in applying the cy pres doctrine to exclude the racially discriminatory classification in this charitable devise and ordering that the property be transferred to the trustees of the Social Circle Schools to be used for the benefit of all of the children of the schools.

In *Trammell v. Elliott,* 230 Ga. 841 (5) (199 SE2d 194) (1973), this court undertook an analysis of the cy pres doctrine and its applicability to charitable trusts containing exclusionary clauses based on race. The question in that case and in the case at bar is whether the cy pres doctrine can be applied to strike the illegal clause. The general rule is that the cy pres doctrine is applicable when the testator has manifested a general charitable intent and is not applicable when the testator has manifested only a specific charitable intent. In *Trammell* the court held that a general charitable intent would be inferred in every trust for a charitable purpose and the cy pres doctrine applied in the absence of clear, definite and unambiguous evidence to the contrary. In that case, the cy pres doctrine was applied to a charitable devise couched in language similar to the one in this case. However, the court in *Trammell* specifically noted that there was no other evidence supportive of a specific charitable intent such as a reversionary clause or gift over in the event of failure of the charitable grant. In the present case, there is a controlling reversionary clause in Item 6 of testator's will: *"In the event said property is* not accepted by said Social Circle Schools or *used for any other purpose than above indicated and directed, it is to revert to my estate and go to my next of kin."* The authorities are universally in accord that the doctrine of cy pres is simply inapplicable if there is a reversionary clause or valid gift over in the event the charitable gift fails for any reason. See Bogert, Trusts and Trustees (2d Ed. 1964), § 431, p. 396; 4 Scott on

Trusts (3rd Ed. 1967), § 399.2, p. 3097; Restatement Trusts 2d (1959), § 399, Comment c, p. 299. See also 15 AmJur2d 190, 191, Charities, § 160 (1976). Other courts which have invoked the cy pres doctrine to strike racial exclusionary clauses from charitable trusts have noted the absence of a reversionary clause or provision for a gift over, see Wachovia Bank & Trust Co. v. Buchanan, 346 F Supp. 665 (D.C. D.C. 1972); Wooten v. Fitz-Gerald, (Tex. Civ. App.) 440 SW2d 719 (1969), and when a provision for a gift over was present the cy pres doctrine was not applied on that ground. Connecticut Bank &c. Co. v. Johnson Memorial Hospital, 30 Conn. Sup. 1 (294 A2d 586) (1972). See Annot: Validity and Effect of Gift for Charitable Purposes which Excludes Otherwise Qualified Beneficiaries Because of their Race or Religion, 25 ALR2d 736.

These secondary authorities are consistent with what this court said in *Trammell* and the language of that case militates against our applying the cy pres doctrine in this case. Therefore, we reverse the trial court's ruling in favor of the trustees for the Social Circle School System and direct that judgment be entered in favor of the appellant executors.

*Judgment affirmed in part; reversed in part. All the Justices concur, except Gunter, J., who concurs in the judgment only.*

ARGUED JANUARY 12, 1977 — DECIDED FEBRUARY 9, 1977.

*Rupert A. Brown, Erwin, Epting, Gibson & McLeod, Eugene A. Epting,* for appellants.

*Barwick, Bentley & Binford, Thomas S. Bentley,* for appellees.