A07A0404. BAKER v. MERRILL LYNCH TRUST COMPANY, FSB et al.

(650 SE2d 296)

RUFFIN, Judge.

Merrill Lynch Trust Company, FSB, as trustee and executor, brought this action seeking construction of Margaret L. Scarbrough's trust and will, naming Scarbrough's heirs as respondents. The parties filed cross-motions for summary judgment, and the trial court ruled in favor of the heirs. In its appeal, the State, acting as parens patriae, argues that the trial court erred in granting summary judgment to the heirs.[1] For reasons that follow, we agree and reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[2] We review the grant of summary judgment de novo, construing the evidence in favor of the nonmovant.[3] So viewed, the evidence shows that Margaret L. Scarbrough executed her Last Will and Testament (the "Will") and the Margaret L. Scarbrough Revocable Trust (the "Trust") on June 25, 2002. With the exception of specific bequests of personal items and devises regarding her dog, the Will provided that Scarbrough's estate would be distributed to the Trust. Item V of the Trust directs that upon Scarbrough's death:

A. The sum of Ten Thousand Dollars ($10,000) shall be distributed to each of [Scarbrough's] sisters, JEWEL DOUG-LAS, DORIS BAILEY and JEAN BURHAM, who survive [her].

B. The sum of Fifteen Thousand Dollars ($15,000) shall be distributed to [Scarbrough's] late husband's niece, DOUG-LAS EDGAR, if she survives [Scarbrough].

---

[1] The State appealed directly to the Supreme Court of Georgia, which transferred the case to this Court.

[2] See OCGA § 9-11-56 (c); *Smith v. Atlantic Mut. Cos.*, 283 Ga. App. 349, 350 (641 SE2d 586) (2007).

[3] See *Smith*, supra.

C. All assets contained in any account or accounts which [Scarbrough] may hold at the time of [her] death with Merrill Lynch, Pierce, Fenner & Smith Inc. shall be distributed to THE MARGARET, OWEN[,] AND PAULA SCAR- BROUGH FOUNDATION, INC. established by [Scarbrough] during [her] lifetime. It is [Scarbrough's] desire that the FOUNDATION employ the services of RANDY SMITH at Merrill Lynch, Pierce, Fenner & Smith Inc. to manage any such assets on behalf of the FOUNDATION.

D. The balance of the property remaining in this Trust, after the specific bequests hereinabove, shall be distributed to THE MARGARET, OWEN[,] AND PAULA SCARBROUGH FOUNDATION, INC.

Scarbrough served as trustee until the time of her death, after which the Trust provided that Susan B. Smith would become successor trustee.

Scarbrough died on August 12, 2002, before The Margaret, Owen, and Paula Scarbrough Foundation, Inc. (the "Foundation") was established. On September 9, 2002, trustee Smith resigned her position and appointed Merrill Lynch Trust Company, FSB ("Merrill Lynch") as successor trustee. Thereafter, on November 10, 2003, Merrill Lynch created "The Margaret, Owen[,] and Paula Scarbrough Foundation," which provided that Merrill Lynch, as trustee, could make distributions for the use of "charitable organizations."

On January 28, 2005, Merrill Lynch, as successor trustee and executor under the Will, filed a Petition for Construction, Direction, Declaratory Judgment, and Cy Pres in the Superior Court of Cobb County, naming Scarbrough's heirs (the "heirs") as respondents. Specifically, the petition requested that the trial court declare that (1) although the bequest in Scarbrough's trust could not be effected in the exact manner provided in the Trust, her primary purpose was to provide for charity; and (2) Merrill Lynch, through the application of the doctrine of cy pres, was permitted to transfer Scarbrough's residuary assets to the charitable Foundation it created. The heirs counterclaimed, asserting that because the specific unambiguous bequest to the foundation was impossible, the property would revert to the heirs by operation of law. The Attorney General, acting as parens patriae, filed an answer requesting that the trial court direct the application of the estate property so as to effect Scarbrough's

intent to bequeath her estate to a charitable use in trust.[4] Merrill Lynch later amended its petition, asking the trial court to direct that the residuary assets be transferred to the Foundation it established on November 10, 2003 or, in the alternative, "to a community foundation with an endowment fund for the benefit of the elderly or to one or more appropriate public charities with an endowment fund for the benefit of the elderly consistent with the expressed intention of [Scarbrough]."

The heirs filed a motion for summary judgment, and Merrill Lynch filed a cross-motion.[5] To support their positions, Merrill Lynch and the State referred to the testimony of David F. Golden, the attorney who drafted Scarbrough's Will and Trust. According to Golden, Scarbrough intended to leave her residuary estate to a private charitable foundation that she would establish in the names of her late daughter and husband.

Following oral argument, the trial court ruled in favor of the heirs, declining to apply the cy pres doctrine because the language of the Trust did not reveal a charitable intent. In the order, the court held that "the mere use of the term 'Foundation' within the name of the proposed entity is insufficient for [the court] to discern a general charitable intent to be effectuated through application of cy pres." The court also concluded that Golden's testimony was not admissible because the plain and unambiguous language of the Trust provided that the residuary estate go to a specific entity created by Scarbrough during her lifetime.

The State challenges the trial court's grant of summary judgment to Scarbrough's heirs, contending that the court erred by: (1) concluding that the Trust was unambiguous; (2) failing to consider the testimony of the attorney who drafted the Will and Trust; (3) determining that Scarbrough did not possess a general charitable intent; (4) failing to apply the doctrine of cy pres; and (5) failing to appoint a new trustee.

It is undisputed that the Trust could not be effectuated in the precise manner set forth in the language of the agreement because Scarbrough failed to establish the Foundation before she died. Thus, the trial court had to determine whether Scarbrough's residual estate

---

[4] See OCGA § 53-12-115 ("In all cases in which the rights of beneficiaries under a charitable trust are involved, the Attorney General . . . shall represent the interests of the beneficiaries and the interests of this state as parens patriae in all legal matters pertaining to the administration and disposition of such trust.").

[5] Although the State did not join in Merrill Lynch's motion for summary judgment, it did oppose the heirs' summary judgment motion in a brief and at oral argument.

should be distributed to her heirs at law, or whether the assets should go to charity through the application of the cy pres doctrine.[6]

The doctrine of cy pres is codified at OCGA § 53-12-113, which provides that "[i]f a valid charitable bequest, trust, or gift cannot be executed in the exact manner provided by the testator, settlor, or donor, the superior court will exercise equitable powers in such a way as will as nearly as possible effectuate the intention of the testator, settlor, or donor." Generally, the cy pres doctrine is applied:

> (1) where there is the presence of an otherwise valid chari-table grant or trust; that is, one that has charity as its purpose and sufficiently offers benefits to an indefinite public; (2) where the specific intention of the settlor may not be legally or practicably carried into effect; and (3) where there is exhibited a general charitable intent on the part of the settlor.[7]

The issue in this case is whether Scarbrough's Trust evidenced a charitable intent. "A charitable trust is one in which the settlor provides that the trust property shall be used for charitable pur-poses."[8] In deciding whether a trust exhibits "a valid charitable purpose," a trial court should first consider the legitimate subjects of charity in Georgia, currently set forth in OCGA § 53-12-110, and then "consider, from the instrument itself, whether there is exhibited a general charitable intent."[9]

Here, it is not clear from the language of the Trust whether Scarbrough had such an intent. The Trust did not contain the term "charity," or any variation of the word, and it did not mention any of the legitimate charitable subjects recognized in Georgia.[10] However, the instrument did provide that Scarbrough's property would be distributed to a foundation, which was not described. This provision is ambiguous, and the trial court erred in concluding otherwise.

"Ambiguity is duplicity, indistinctness, an uncertainty of mean-ing or expression. . . . Thus, a word or phrase is ambiguous when it is

---

[6] See OCGA § 53-12-91 (1) (if a trust fails, a resulting trust will be implied for the benefit of the testator or her heirs).

[7] *Trammell v. Elliott*, 230 Ga. 841, 846 (5) (199 SE2d 194) (1973).

[8] OCGA § 53-12-111.

[9] *Trammell*, supra at 846.

[10] See OCGA § 53-12-110 ("The following subjects, as well as other subjects having for their purpose the relief of human suffering or the promotion of human civilization, are proper subjects of charity: (1) [t]he relief of poverty; (2) [t]he advancement of education; (3) [t]he advancement of ethics and religion; (4) [t]he advancement of health; (5) [t]he improvement or repair of cemeteries or tombstones; (6) [t]he prevention of cruelty to animals; and (7) [g]overn-mental purposes.").

of uncertain meaning and may be fairly understood in more ways than one."[11] Dictionaries reveal that the term "foundation" may be understood to mean either a charitable or a noncharitable entity.[12] According to Black's Law Dictionary (8th ed. 2004), the term "foundation" signifies "[a] fund established for charitable, educational, religious, research, or other benevolent purposes; an endowment." However, according to Webster's Ninth New Collegiate Dictionary (1985), a foundation is "an organization or institution established by endowment with provision for future maintenance." Thus, the word "foundation," as used in the Scarbrough Trust, is ambiguous.

In Georgia, "[w]hen the construction of an express trust is at issue, the court may hear parol evidence of the circumstances surrounding the settlor at the time of the execution of the trust and parol evidence to explain all ambiguities, both latent and patent."[13] The State did not cite any authority approving the admissibility of parol evidence to determine whether a trust exhibits a charitable intent. Nevertheless, considering the public policy favoring the validation of charitable grants and the Supreme Court's disapproval of forfeitures based on the impossibility of specific valid charitable bequests,[14] we conclude that the trial court erred in failing to consider parol evidence to explain the ambiguity and determine Scarbrough's intent.[15] We therefore reverse the trial court's order and remand for consideration of parol evidence consistent with this opinion.[16]

*Judgment reversed and case remanded. Blackburn, P. J., and Bernes, J., concur.*

DECIDED JULY 5, 2007 —
RECONSIDERATION DENIED JULY 25, 2007 — ▮▮▮▮▮▮

*Thurbert E. Baker, Attorney General, John B. Ballard, Jr., Grace E. Lewis, Assistant Attorneys General*, for appellant.
*C. Fred Reeves, W. Allen Separk, Patricia D. Friedman*, for appellees.

---

[11] (Citation and punctuation omitted.) *Archer v. Carson*, 213 Ga. App. 161, 163 (2) (444 SE2d 82) (1994).

[12] See *Market Place Shopping Center v. Basic Business Alternatives*, 213 Ga. App. 722 (1) (445 SE2d 824) (1994) (we use dictionaries to discern plain and ordinary meaning of a word).

[13] OCGA § 53-12-27.

[14] See *Trammell*, supra at 845.

[15] See OCGA § 53-12-27; *Ovrevik v. Ovrevik*, 242 Ga. App. 95, 100 (5) (527 SE2d 586) (2000).

[16] See *Ovrevik*, supra.